**In re NATIONAL AIRLINES, INC., Maternity Leave Practices and Flight Attendant Weight Program Litigation.**

No. 82–5376.

United States Court of Appeals, Eleventh Circuit.

March 17, 1983.

Donald B. Myers, Jones, Grey & Bayley, James A. Miller, Seattle, Wash., for Gardner, Knipple and White.

Barry R. Davidson, John M. Barkett, Miami, Fla., for Pan Am.

James Ritchie, Henning, Walsh & Ritchie, San Francisco, Cal., George H. Tucker, Miami, Fla., for Independent Union of Flight Attendants.

Before GODBOLD, Chief Judge, HENDERSON and CLARK, Circuit Judges.

PER CURIAM:

The plaintiffs-appellants, National Airlines (National) female flight attendants, appeal the decision of the United States

District Court for the Southern District of Florida denying their request for an injunction against Pan American World Airways (Pan American), in a class action brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court had earlier held that National's maternity leave policy violated Title VII as discriminatory on the basis of sex. The attendants later moved for an injunction to prohibit Pan American, which had acquired National after the initial adjudication of sex bias, from enforcing its identical maternity leave policy. At issue here is whether the district court abused its discretion in denying the appellants' application for an injunction.

In the 1970's, female flight attendants employed by several airlines instituted various actions against their employers challenging their maternity leave policies on the grounds that the rules constituted unlawful sex discrimination. By order of the Judicial Panel on Multidistrict Litigation, the lawsuits brought against National by its female flight attendants were consolidated for trial in the United States District Court for the Southern District of Florida. *In Re National Airlines, Inc. Maternity Leave Practices and Flight Attendant Weight Program Litigation,* 399 F.Supp. 1405 (J.P.M.D.L.1975). Unfortunately, even though similar pregnancy leave policies of other airlines were under attack in several district courts throughout the country, the lawsuits were not combined in one action.[1]

The policy under challenge in this appeal requires a female flight attendant to notify the airline immediately upon discovering that she is pregnant. At that time, the attendant is placed on mandatory unpaid maternity leave and is not permitted to return to work until after the termination of the pregnancy. An attendant who fails to furnish such notification is subject to dismissal by the company.[2]

During the bench trial on the merits of the case, experts testified about the effects of pregnancy on the abilities of flight attendants to perform their responsibilities. National asserted that the policy was necessary because pregnancy could prevent flight attendants from adequately insuring the safety of the passengers. The district court held that the policy constituted a *prima facie* violation of Title VII's prohibition of sex discrimination. Examining National's reasons for the policy, the court concluded that National's interest in the safety of its passengers justified the mandatory leave as a bona fide occupational qualification after the twentieth week of pregnancy. The court found, however, that the attendants should be allowed to fly during the first trimester because that stage of pregnancy would not interfere with the flight attendants' performance of their safety duties and that they could continue to work during the thirteen-twenty week period of pregnancy, so long as they were certified capable by a National Airlines physician. *In re National Airlines, Inc. Maternity Leave Practices and Flight Attendant Weight Program Litigation,* 434 F.Supp. 249 (S.D.Fla.1977).

Approximately three months after the announcement of the Southern District of Florida decision, the United States District Court for the Northern District of California determined that Pan American's identical maternity leave practice did not violate Title VII. That court was persuaded that Pan American's duty to provide for the

---

1. In its May, 1977 decision, the district court pointed out this problem. The court stated that it "has discovered that similar lawsuits are pending against Eastern Airlines, Western Airlines and Pan American World Airways." *In re National Airlines, Inc. Maternity Leave Practices and Flight Attendant Weight Program Litigation,* 434 F.Supp. 249, 252 (S.D.Fla.1977). It is perhaps ironic that the court foresaw the dilemma now evident here when it noted "[t]he result of such similar litigation being tried in various district courts may well be a diver-
gence of decisions, which not only will affect the litigants but until higher courts have achieved some uniformity, will also leave flight attendants, ground employees and employer airlines which are not parties to these cases in some doubt as to what their policy should be." *Id.* at 253.

2. For a more detailed description of the policy, its background and the context in which disputes concerning the policy arose, see 434 F.Supp. at 253–55.

safety of its passengers justified the policy because pregnancy could obstruct the safety functions of its attendants. *Harriss v. Pan American World Airways,* 437 F.Supp. 413 (N.D.Cal.1977), *aff'd in relevant part* 649 F.2d 670 (9th Cir.1980).

This disparity in the district court judgments might have been nothing more than academically troublesome at this point. However, the theoretical problem became an actual conflict in 1980 when Pan American acquired National through a merger. After the acquisition was announced, the Ninth Circuit affirmed the *Harriss* decision thereby validating Pan American's policy. This opinion did not mention the acquisition or the judgment favorable to the appellants in the Southern District of Florida. Thus, the first opportunity to address this collision of decisions did not provide a resolution of the problem.

Following the acquisition, Pan American continued to enforce its mandatory maternity leave policy against pregnant flight attendants of both National and Pan American.[3] In September, 1980, the former National flight attendants filed a motion in the Florida district court to enjoin Pan American from applying its policy to the former National plaintiff class. The district court substituted Pan American as a defendant for National in January, 1982. Subsequently, in February, 1982, the district court denied the injunction. The court concluded that although Pan American would be liable as a successor corporation for money damages arising from the National lawsuit, on balance, it would be inequitable to restrain Pan American from pursuing a course of action theretofore declared valid by another federal district court. This appeal followed.

It should be noted at the outset that the merits of the district court's 1977 decision are not before this court for review in this appeal. We therefore express no opinion concerning the propriety of the district court's original decision finding National's mandatory maternity leave policy unlawful. These same policies have been examined by several courts, without any emerging uniform resolution. *See, e.g., Burwell v. Eastern Air Lines, Inc.,* 633 F.2d 361 (4th Cir. 1980); *Air Line Pilots Association et al. v. Western Air Lines, Inc.,* 23 Fair Empl.Prac. Cas. (BNA) 1042 (N.D.Cal.1979); *Maclennan v. American Airlines, Inc.,* 440 F.Supp. 466 (E.D.Va.1977); *Condit v. United Air Lines, Inc.,* 13 Fair Empl.Prac.Cas. (BNA) 689 (E.D.Va.1976), *aff'd* 558 F.2d 1176 (4th Cir.1977), *cert. denied,* 435 U.S. 934, 98 S.Ct. 1510, 55 L.Ed.2d 531 (1978); *United Air Lines, Inc. v. State Human Rights Appeal Board,* 61 A.D.2d 1010, 402 N.Y.S.2d 630 (N.Y.App.Div.1978), *cert. denied,* 439 U.S. 982, 99 S.Ct. 571, 58 L.Ed.2d 653 (1978). For purposes of this appeal, we assume that the district court's substantive decision is correct and confine ourselves to the remedial issues.

■ As a general rule, district judges have broad discretion in the fashioning of orders to remedy past and present discrimination. *See, e.g., Harper v. Thiokol Chemical Corp.,* 619 F.2d 489, 494 (5th Cir.1980). *See also,* 42 U.S.C. § 2000e–5(g). Nevertheless, this discretion has been severely limited in cases involving ongoing discrimination. In such instances, this court has stated that "injunctive relief is *mandatory* absent clear and convincing proof that there is no reasonable probability of further noncompliance with the law." *NAACP v. City of Evergreen Alabama,* 693 F.2d 1367, at 1370 (11th Cir.1982) (emphasis in original). *See also, James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 354 (5th Cir. 1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). Consequently, if this was the usual case of discriminatory employment practices, it is likely that an injunction would not only be appropriate, but, indeed, such a result would be mandated. Pan American's acquisition of National

---

**3.** It also appears that National continued to follow its prior leave plan after the 1977 district court decision. No explanation is given as to why National did not voluntarily change its policy after it had been declared unlawful and why the plaintiff class did not seek an injunction immediately thereafter.

subsequent to the Florida district court opinion, however, removes this action from the category of ordinary cases. Rather than relying upon cases interpreting the Title VII remedial provisions, the acquisition necessitates our focus on the current conflict between the decisions rendered by the Florida and California district courts in terms of successor liability.[4]

The Supreme Court has addressed the question whether a corporation that takes the place of another corporation through merger, acquisition or otherwise (a "successor corporation") should be held liable for unfair labor practices of its predecessor, should be bound by labor contracts between the predecessor and its employees, or, instead, should not be affected by the labor relationships of its predecessor. *See Howard Johnson Co., Inc. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *Golden State Bottling Co., Inc. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *NLRB v. Burns International Security Services, Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). A review of these cases indicates that the Court *balances* the interests of the employees and the employer and labor law policy generally. *See, e.g., Howard Johnson Co.,* 417 U.S. at 262, n. 9, 94 S.Ct. at 2243, n. 9, 41 L.Ed.2d at 56–57, n. 9. Such factors as the extent to which the successor corporation essentially continues the operations of the former corporation and whether the new corporation had notice of the former corporation's practices and policies are also a part of this inquiry. *See, e.g., Golden State Bottling Co.,* 414 U.S. at 171–174, 94 S.Ct. at 418–420, 38 L.Ed.2d at 395–397. *See also, Boeing Co. v. International Association of Machinists and Aerospace Workers,* 504 F.2d 307 (5th Cir.1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1570, 43 L.Ed.2d 779 (1975). Of greater importance,

however, is the Court's pronouncement that the test for successor liability is fact specific and must be conducted "in light of the facts of each case and the particular legal obligation which is at issue." 417 U.S. at 262, n. 9, 94 S.Ct. at 2243, n. 9, 41 L.Ed.2d at 56–57, n. 9. Thus, the Court emphasized that:

> [t]here is, and can be, no single definition of "successor" which is applicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others.

*Id.*

■ Although the former Fifth Circuit Court of Appeals and this court have not considered whether the successor liability doctrines enunciated by the Supreme Court in a labor law setting should be applicable to Title VII successor problems, other courts which have examined this question have answered it in the affirmative. *See, e.g., EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086 (6th Cir.1974). *MacMillan* was the first case to scrutinize successor liability in the area of employment discrimination. Reviewing the labor law successor liability cases discussed above, the Sixth Circuit found that the logic of those cases was equally compelling in Title VII litigation. Many other courts have adopted the *MacMillan* approach. *See Dominguez v. Hotel, Motel, Restaurant & Miscellaneous Bartenders Union, Local 64,* 674 F.2d 732 (8th Cir.1982); *EEOC v. Sage Realty Corp.,* 507 F.Supp. 599 (S.D.N.Y.1981); *Burt v. Ramada Inn of Oxford Mississippi,* 507 F.Supp. 336 (N.D.Miss.1980); *Brown v. Evening News Association,* 473 F.Supp. 1242 (E.D.Mich.1979); *Escamilla v. Mosher Steel Company,* 386 F.Supp. 101 (S.D.Tex.1975). We agree that the balancing of interests, fact specific analysis employed by the Supreme Court in labor law successor cases is the proper method for determining whether a successor employer should be bound by the Title VII transgressions charged against its predecessor.

---

4. As the former Fifth Circuit stated in the related context of successor liability in labor law disputes, "[w]e are in essence called upon to pragmatize the corporate and labor relationships to determine whether the past is part of the present, or the present the beginning of tomorrow." *Boeing Co. v. International Ass'n of Machinists and Aerospace Workers,* 504 F.2d 307, 317 (5th Cir.1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1570, 43 L.Ed.2d 779 (1975).

■ Having concluded that the balancing test is appropriate, we turn to the highly unusual facts of this case. Not only has National been acquired by an airline with a maternity leave policy at odds with one found acceptable by the Florida district court, but Pan American's leave plan was adjudged to be in compliance with Title VII by other courts. Under these particular circumstances, the balance strikes against enjoining Pan American from continuing its policy. In making this judgment, we recognize that the former National attendants have a legitimate interest in working under discrimination-free conditions and are sympathetic with their attempt to realize the benefit of the decision they obtained against National in the Florida district court, but the difficult facts in this case prompt this result.

Pan American successfully defended its policy against a Title VII challenge and has fully integrated former National attendants into its operations. It has a legitimate interest in treating its employees in an even-handed manner. Although the former National attendants argue that the policy approved by the Florida court could be adapted exclusively to the domestic routes comparable to National's former flight system while allowing Pan American to continue its practice validated by the California court on international flights, we are not persuaded that this would be a practical solution. Fashioning a remedy in that manner would work against Pan American's efforts to consolidate its flight attendant system on a route-wide basis. The National attendants' claim that the district court decisions do not conflict because of the differences in the routes of the former airlines is not supported by the opinions in

either case. The Florida district court specifically said that National operated flights from Miami to London and that "[m]ost of National's routes involve flying over water." 434 F.Supp. at 259. Neither court limited its holding to maternity leave policies of particular flights or types of carriers. As an appellate court, we are not now in a position to find that safety concerns justify the policies on international routes but not on domestic routes.

In conclusion, we emphasize that successor liability balancing is a highly fact oriented task. We find only that in light of the particular facts in this case, the district court did not abuse its discretion in denying injunctive relief against Pan American.[5]

For the foregoing reasons, the decision of the district court is

AFFIRMED.

---

5. The district court found that Pan American would be liable as National's successor for money damages arising from the National lawsuit. Pan American did not contest this finding on appeal and, therefore, we do not consider it. However, we note that the Supreme Court has stated that a corporation may be a successor for some purposes but not for others. *Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974). This reasoning would support the

district court's decision on this issue. *Cf. Howard v. Penn Central Transportation Co.,* 87 F.R.D. 342 (N.D.Ohio 1980) (Conrail, as Penn Central's successor, could be required to reinstate or promote an employee who suffered discrimination while in Penn Central's employ but would not be liable as a successor for damages arising from Penn Central's employment practices because Conrail was organized to alleviate the financial troubles of the rail system).