**Becky WALLACE, Plaintiff,**

**Annette Neil, Plaintiff-Appellee,**

**v.**

**DUNN CONSTRUCTION COMPANY, INC., Defendant-Appellant.**

**No. 91-7406.**

United States Court of Appeals, Eleventh Circuit.

Aug. 17, 1992.

Peyton Lacy, Thomas F. Campbell, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendant-appellant.

Marvin L. Stewart, Jr., Najjar Denaburg, P.C., Birmingham, Ala., for plaintiff-appellee.

Before KRAVITCH, Circuit Judge, GODBOLD and JOHNSON *, Senior Circuit Judges.

JOHNSON, Senior Circuit Judge:

Defendant Dunn Construction Company ("Dunn") appeals the district court's denial of its motion for partial summary judgment in this employment discrimination case. We reverse.

## I. STATEMENT OF THE CASE

In May 1990, plaintiff Joyce Annette Neil filed a complaint against Dunn, her former employer, that alleged the following four causes of action under federal law: (1) an inadequate compensation claim under the Equal Pay Act (EPA), *see* 29 U.S.C.A. §§ 206(d)(1), 215(a)(2) (West 1978), (2) a retaliatory discharge claim under the EPA, *see* 29 U.S.C.A. § 215(a)(3) (West 1965); *EEOC v. White and Son Enterprises,* 881 F.2d 1006, 1010–12 (11th Cir.1989),[1] (3) a hostile work environment sexual harassment claim under Title VII, *see* 42 U.S.C.A. § 2000e–2(a)(1) (West 1981) *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 63–69, 106 S.Ct. 2399, 2403–06, 91 L.Ed.2d 49 (1986), and (4) a retaliatory discharge claim under Title VII alleging that her numerous objections to sexual harassment caused her termination, *see* 42 U.S.C.A. § 2000e–3(a) (West 1981). Neil also alleged two tort claims under Alabama law—one for invasion of privacy and one for assault and battery.

As a result of litigating this case, Dunn became aware, when Neil admitted as much in a deposition, that Neil had pled guilty to the Alabama crime of possession of cocaine and marijuana prior to filing her

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. To the extent the opinion in *Wu v. Thomas,* 863 F.2d 1543 (11th Cir.1989), overlooks the plain language of § 215(a)(3) and conflicts with the holding of *White and Son* regarding the statutory origin for EPA retaliation claims, we refuse to follow it. *Compare Wu,* 863 F.2d at 1546 n. 5 (no retaliation provision exists in the EPA; however, Title VII retaliation provision creates cause of action for retaliation against bringing of EPA claim) *with White and Son,* 881 F.2d at 1010–12 (§ 215(a)(3) creates EPA retaliation cause of action).

application for employment with Dunn. This after-acquired evidence established that Neil lied in her application for employment with Dunn.[2] Soon after discovering this evidence, Dunn filed a motion for partial summary judgment, the grounds for which included the contention that the after-acquired evidence of Neil's narcotics convictions and application fraud served as a legitimate cause for terminating Neil's employment irrespective of any alleged unlawful motives.[3] In its order denying this motion, the district court rejected Dunn's after-acquired evidence theory as a matter of law.

Subsequently, Neil and Dunn jointly filed a motion to certify, for an interlocutory appeal, the order denying Dunn's motion for partial summary judgment. *See* 28 U.S.C.A. § 1292(b) (West Supp.1991). The district court granted the motion, and Dunn filed a timely petition for permission to appeal to this Court.[4] A panel of this Court granted the petition for permission to appeal, and Dunn thereafter filed a timely notice of appeal.

## II. ISSUE

The principal issue presented in this appeal is one of law concerning the effect of the after-acquired evidence of Neil's drug conviction and application fraud on Neil's claims.[5]

## III. STANDARD OF REVIEW

We review summary judgment orders *de novo.* *Akins v. Snow,* 922 F.2d 1558, 1560 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2915, 115 L.Ed.2d 1079 (1991). Summary judgment is mandated if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In order for a genuine issue of material fact to exist after full discovery, the evidence regarding the material fact must be "significantly probative." *Hudson v. Southern Ductile Casting Corp.,* 849 F.2d 1372, 1376 (11th Cir.1988).[6]

## IV. ANALYSIS

Initially, we note that the principal issue on appeal may be reduced to whether the after-acquired evidence in this case mandates summary judgment on the federal claims. If the federal claims are due to be dismissed, then the state law claims would likely be dismissed for lack of pendent jurisdiction. *See Carnegie–Mellon*

2. Neil checked the "no" box after the question, "Have you ever been convicted of a crime?"

3. In its motion for partial summary judgment, Dunn asserted this after-acquired evidence theory against only the discharge claims and not against the EPA inadequate compensation, the Title VII sexual harassment, or the state law tort claims. However, the district court, in its order denying partial summary judgment, interpreted Dunn's motion as asserting the after-acquired evidence theory against all of Neil's claims. Thereafter, all pleadings, motions, and orders considered the after-acquired evidence theory as having been asserted against all of Neil's claims.

4. In its order granting the joint motion to certify, the district court stated that the "controlling question of law is whether or not Neil's action should be dismissed because of the undisputed fact that she falsified the employment application by which she gained employment at Dunn." It further stated that the case of *Summers v. State Farm Mutual Automobile Insur. Co.,* 864 F.2d 700 (10th Cir.1988), "if it reflects the law of the Eleventh Circuit, would mandate summary judgment against Neil."

5. On appeal, Neil claims, for the first time in this case, that Dunn waived this principal issue by failing to raise it in any of its answers. Neil's argument is frivolous. Dunn's motion for partial summary judgment, filed the same day as Dunn's last answer, put Neil on notice of the after-acquired evidence issue. Thus, no violation of Fed.R.Civ.P. 8(c) occurred because Neil suffered no prejudice. *See Grant v. Preferred Research, Inc.,* 885 F.2d 795, 797 (11th Cir.1989). Therefore, the *Summers* issue is properly before this Court. Moreover, six days after Dunn filed its last answer and its partial summary judgment motion, the district court issued its pretrial order which explicitly incorporated all affirmative defenses raised by motion. *See* Fed. R.Civ.P. 16(e) (pretrial order "shall control subsequent course of action"). *Cf. Automated Medical Laboratories, Inc. v. Armour Pharmaceutical Co.,* 629 F.2d 1118, 1122–23 (5th Cir. 1980) (failure to assert affirmative defense in answer curable by insertion of the defense in pretrial order).

6. The parties agreed in their joint motion to certify that the record was complete regarding the after-acquired evidence issue.

*Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). If the federal claims are viable, then the state law claims survive because Dunn has cited no authority indicating that the Alabama law claims are due to be dismissed in whole or in part on independent state law grounds because of the after-acquired evidence, and we are aware of no such authority.

The proper role of after-acquired evidence under federal employment discrimination statutes raises an issue of first impression in this Circuit and has been explicitly addressed at length by only one other Circuit, the Tenth, in *Summers v. State Farm Mutual Automobile Insur. Co.,* 864 F.2d 700 (10th Cir.1988). *See also Johnson v. Honeywell Information Sys., Inc.,* 955 F.2d 409, 415 (6th Cir.1992) (summarily adopting *Summers* rule in alternative holding in case brought under state employment discrimination provision construed in same manner as Title VII). Dunn contends that the *Summers* approach is correct. We disagree.

A. *The **Summers** Proposition*

In *Summers,* the plaintiff alleged that he was discharged because of his age and his religion. 864 F.2d at 702. His employer asserted that the reason for Summers' termination was a bad attitude and a poor rapport with co-workers and customers. *Id.* at 702–03. Even though his employer knew at the time of the discharge that Summers had falsified records on several occasions, the employer conceded that falsification of records was not the reason for Summers' discharge. *Id.* During preparation for trial almost four years after the termination of Summers, however, the employer discovered 150 additional falsifications attributable to Summers. *Id.* at 703. The Tenth Circuit panel held that such after-acquired evidence mandated summary judgment for the employer. *Id.* at 709.

The *Summers* Court acknowledged that the after-acquired evidence was theoretically irrelevant to whether the employer was liable *vel non* to Summers for the discharge because the existence of liability depends on the actual motivation for the discharge, rather than a *post hoc* hypothetical motivation based on knowledge acquired subsequent to the discharge decision. *Id.* at 704–05. Nevertheless, the *Summers* panel ultimately held that the after-acquired evidence barred the existence of liability as a practical matter and thus provided the employer with the equivalent of an affirmative defense. The Court held that the after-acquired evidence was "relevant to Summers' claim of 'injury,' and does itself preclude the grant of any present relief or remedy to Summers." *Id.* at 708. The Court punctuated its holding with an analogy:

> The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a "doctor." In our view, the masquerading doctor would be entitled to no relief and Summers is in no better position.

*Id.* Thus, the *Summers* case fashioned a rule that an employer may avoid all liability for a discharge based solely on unlawful motives by proving that it would have discharged the plaintiff absent any unlawful motives *if* it had possessed full knowledge of the circumstances existing at the time of the discharge.[7]

In its analysis, the *Summers* Court relied primarily on *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *See Summers,* 864 F.2d at 705–06.[8] After

7. At least two courts have extended the *Summers* rule to sexual harassment situations, each holding that a victim of sexual harassment suffered no injury because she lied on her employment application. *Churchman v. Pinkerton's, Inc.,* 756 F.Supp. 515, 519–21 (D.Kan.1991); *Mathis v. Boeing Military Airplane Co.,* 719 F.Supp. 991, 994–95 (D.Kan.1989).

8. The *Summers* court also placed significant reliance on three cases decided by other circuit courts. These cases are clearly distinguishable from the facts of *Summers. Id.* at 706–07. The first of these cases, *Blalock v. Metals Trades, Inc.,* 775 F.2d 703 (6th Cir.1985), did not involve after-acquired evidence. The other two cases, *Smallwood v. United Air Lines, Inc.,* 728 F.2d 614 (4th Cir.), *cert. denied,* 469 U.S. 832, 105

careful consideration, we agree with the *Summers* Court that *Mt. Healthy* provides important and persuasive guidance concerning after-acquired evidence; however, we take issue with the Tenth Circuit's interpretation of *Mt. Healthy* and find that *Mt. Healthy* and related principles actually subvert, rather than support, the Tenth Circuit's rule.

B. *The Mt. Healthy Principle*

The plaintiff in *Mt. Healthy,* a teacher, claimed that his employer failed to rehire him in retaliation for exercising his First Amendment rights. *Mt. Healthy,* 429 U.S. at 276, 97 S.Ct. at 570. At the time of the decision not to rehire, the employer stated that there were two reasons for the discharge—the plaintiff's protected speech and the plaintiff's use of obscene gestures toward students. *Id.* at 283 n. 1, 97 S.Ct. at 574 n. 1. The Supreme Court held that, if the plaintiff had met his burden of showing that his exercise of his First Amendment rights was a " 'substantial factor' " in the refusal-to-rehire decision, then the school board could avoid liability only if it satisfied the burden of proving "that it *would* have reached the same decision ... even in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576 (emphasis added). The Court reasoned that in the absence of such an affirmative defense the law would

> require reinstatement in cases where a dramatic and perhaps abrasive incident is inevitably on the minds of those responsible for the decision to rehire, *and does indeed play a part in that decision*—even if the same decision *would* have been reached had the incident not occurred. The constitutional principle at stake is sufficiently vindicated if such an employee is *placed in no worse a position than if he had not engaged in the conduct.*

*Id.* at 285–86, 97 S.Ct. at 575 (emphasis added).

The *Summers* rule constitutes an unwarranted extension of *Mt. Healthy* in that the *Summers* rule ignores the lapse of time between the employment decision and the discovery of a legitimate motive for that decision. Whereas the *Mt. Healthy* rule excuses all liability based on what *actually* would have happened absent the unlawful motive, the *Summers* rule goes one step further: it excuses all liability based on what *hypothetically* would have occurred absent the alleged discriminatory motive *assuming the employer had knowledge that it would not acquire until sometime during the litigation arising from the discharge.*[9] In doing so, the *Summers* rule clashes with the *Mt. Healthy* principle (adapted for use in statutory discrimination cases) that the plaintiff should be left in no worse a position than if she had not been a member of a protected class or engaged in protected opposition to an unlawful employment practice. *See id.* at 285–86, 97 S.Ct. at 575. *See also Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (one purpose of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination"). The Tenth Circuit clearly placed Summers in a worse position than if he had not been a member of a protected class. According to the facts assumed by the Court, absent his age and his religion, Summers would have remained employed for at least some period

S.Ct. 120, 83 L.Ed.2d 62 (1984), and *Murnane v. American Air Lines, Inc.,* 667 F.2d 98 (D.C.Cir. 1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982), involved refusals to hire that would have occurred absent any unlawful motives because the employers proved that, in the next step of the hiring process, they would have uncovered a legitimate reason for not hiring the plaintiffs. *Smallwood,* 728 F.2d at 626–27; *Murnane,* 667 F.2d at 102. Thus, in *Smallwood* and *Murnane,* no injuries to the plaintiffs were possible because, in fact, they never would have been hired even absent the discriminatory motive. However, in *Summers,* injury to the plaintiff was obviously possible because the evidence is clear that he would have had a longer tenure with his employer absent the alleged discriminatory motive.

9. We acknowledge that the *Summers* Court noted a "high probability" that a small number of Summers' falsifications would have been discovered absent trial preparation. *Summers,* 864 F.2d at 707 n. 3. However, this finding was irrelevant to the holding in *Summers.*

of time after he was actually discharged. Nevertheless, the Tenth Circuit denied him any relief for that lost period of employment.

### C. *The Price Waterhouse Opinion*

After the *Summers* decision, the Supreme Court handed down its decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), which clarified the role of *Mt. Healthy* in Title VII cases and reemphasized the principal source of our disagreement with the *Summers* rule. In *Price Waterhouse,* the Court addressed the issue of "the respective burdens of proof of a defendant and plaintiff in a suit under Title VII when it has been shown that an employment decision resulted from a mixture of legitimate and illegitimate motives." *Id.* at 232, 109 S.Ct. at 1781 (plurality opinion). The Court essentially confirmed that the *Mt. Healthy* analysis applied to Title VII and held that, in a mixed-motive case, if the plaintiff bears her burden of proving by direct evidence that an impermissible criterion was a " 'substantial factor' " in the adverse employment decision, then the burden of persuasion shifts to the employer to establish by a preponderance of the evidence that the same decision would actually have been made absent an unlawful motive. *Id.* at 261, 276, 109 S.Ct. at 1796, 1804 (O'Connor, J., concurring in judgment); *id.* at 259–60, 109 S.Ct. at 1795 (White, J., concurring in judgment); *id.* at 241–46, 109 S.Ct. at 1785–88 (plurality opinion). *But see* Civil Rights Act of 1991, Pub.L. No. 102–166, § 107, 105 Stat. 1071, 1075–76 (1991) (amending Title VII to overturn an aspect of *Price Waterhouse* holding). Both concurrences and the plurality relied on the *Mt. Healthy* principle discussed *supra* in deriving the *Price Waterhouse* holding. *Id.* at 248–49, 109 S.Ct. at 789–90 (plurality opinion); *id.* at 258–60, 109 S.Ct. at 1794–95 (White, J., concurring in judgment); *id.* at 277, 109 S.Ct. at 1804 (O'Connor, J., concurring in judgment). The holding and reliance on *Mt. Healthy* in the *Price Waterhouse* opinion constitute implicit approval of the *Summers* Court's extension of *Mt. Healthy* to Title VII; however, they confirm our initial conclusion that the *Summers* Court misinterpreted *Mt. Healthy* and the guidance it provides for after-acquired evidence cases by ignoring the time lapse between the unlawful act and discovery of a legitimate motive and thus putting the plaintiff in a worse position than if she had not been a member of a protected class or engaged in protected conduct. *See supra* Part IV.B. *See also Regents of the Univ. of Cal. v. Bakke,* 438 U.S. 265, 320 n. 54, 98 S.Ct. 2733, 2764 n. 54, 57 L.Ed.2d 750 (1978) (Powell, J.) (refusing to order remand for consideration of whether plaintiff, who was rejected through unlawful process, would have been rejected if defendant had employed a lawful process).

### D. *The Principal Purpose of Title VII*

The *Summers* rule is antithetical to the principal purpose of Title VII—" 'to achieve equality of employment opportunity' " by giving employers incentives " 'to self-examine and self-evaluate their employment practices and to endeavor to eliminate, so far as possible,' " employment discrimination. *Albemarle Paper,* 422 U.S. at 417–18, 95 S.Ct. at 2371–72 (quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 429–30, 91 S.Ct. 849, 852–53, 28 L.Ed.2d 158 (1971), and *United States v. N.L. Indus.,* 479 F.2d 354, 379 (8th Cir.1973)). The *Summers* rule does not encourage employers to eliminate discrimination. Rather, it invites employers to establish ludicrously low thresholds for "legitimate" termination and to devote fewer resources to preventing discrimination because *Summers* gives them the option to escape all liability by rummaging through an unlawfully-discharged employee's background for flaws and then manufacturing a "legitimate" reason for the discharge that fits the flaws in the employee's background. Even more troubling is the incentive to "sandbag." *Summers* encourages an employer with a proclivity for unlawful motives to hire a woman—despite knowledge of a legitimate reason that would normally cause the employer not to employ her—to destroy any evidence of such knowledge, to pay her less on the basis of her gender, to sexually

harass her until she protests, to discharge her, and to "discover" the legitimate motive during the ensuing litigation, thus escaping any liability for the unlawful treatment of the erstwhile employee.

In sum, the analysis underlying the Supreme Court's jurisprudence in mixed-motive cases convinces us that the law governing after-acquired evidence should not ignore the time lapse between the unlawful act and the discovery of a legitimate motive and therefore should not replicate the law applicable to mixed motives. Furthermore, the primary objective of Title VII would be disserved by such an approach. Therefore, we reject the *Summers* rule that after-acquired evidence may effectively provide an affirmative defense to Title VII liability.[10]

E. *The Proper Approach*

We agree with the abstract proposition, espoused by the *Summers* Court, that after-acquired evidence is relevant to the relief due a successful Title VII plaintiff under 42 U.S.C.A. § 2000e–5(g) (1981). *Summers,* 864 F.2d at 708. Simply put, Title VII does not limit an employer's freedom to make decisions for reasons that are not unlawful. *Price Waterhouse,* 490 U.S. at 239, 109 S.Ct. at 1784 (plurality opinion). *Cf. Mt. Healthy,* 429 U.S. at 285–86, 97 S.Ct. at 575 (disapproving of reinstatement of former employee when a legitimate reason supported decision against rehiring). However, one of the purposes of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). A sufficient showing of after-acquired evidence mandates the drawing of a boundary between the preservation of the employer's lawful prerogatives and the restoration of the discrimination victim.[11] To be sure, the boundary will vary depending on the facts of each case. Therefore, the effect of after-acquired evidence on Title VII remedies is best decided on a case-by-case basis.

In the case at bar, assuming that the after-acquired evidence in and of itself would have caused Dunn to discharge Neil, it would be inappropriate for a court to order reinstatement or front pay regarding her Title VII discharge claim. *See Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1319 n. 2 (7th Cir.1989) (dicta in Title VII case stating that reinstatement improper if plaintiff lied to obtain job and was dischargeable for that lie); *Milligan–Jensen v. Michigan Tech. Univ.,* 767 F.Supp. 1403, 1417 (W.D.Mich.1991) (denied front pay on basis of after-acquired evidence). *Cf. Mt. Healthy,* 429 U.S. at 285–86, 97 S.Ct. at 575 (disapproving of reinstatement of former employee when a legitimate reason supported decision against rehiring). In other

10. We also reject two subsidiary arguments made by Dunn ostensibly based on *Summers:* that Neil lacks standing and that Neil is barred from any relief by the doctrine of clean hands. Aside from the fact that the *Summers* Court never mentioned standing or clean hands, these arguments fail because they ignore the effect of Title VII. Title VII and the EPA create standing for Neil. *Warth v. Seldin,* 422 U.S. 490, 514, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975) ("Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute"). Further, we are unaware of any binding authority that advocates withholding relief under Title VII or the EPA on the basis of a private plaintiff's unclean hands. *But cf. EEOC v. Dresser Indus., Inc.,* 668 F.2d 1199, 1202 (11th Cir.1982) (application of laches doctrine to suit brought by EEOC). *But see St. John v. Employment Dev. Dept.,* 642 F.2d 273, 275 (9th Cir.1981) (affirming refusal to order reinstatement evidently on basis of clean hands doctrine). However, even if the doctrine of clean hands were applicable to this case, the effect of this equitable doctrine would be limited by the remedial goals of Title VII and the EPA in the manner which we prescribe in this opinion. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416–17, 95 S.Ct. 2362, 2370–71, 45 L.Ed.2d 280 (1975).

11. The employer bears the burden of persuasion to show by a preponderance of the evidence whether and in what manner after-acquired evidence would have legitimately altered the employment relationship and hence should affect Title VII relief under the approach prescribed herein. *Cf. Price Waterhouse,* 490 U.S. at 261, 109 S.Ct. at 1796 (O'Connor, concurring in judgment); *id.* at 259–60, 109 S.Ct. at 1795 (White, J., concurring in judgment); *id.* at 258, 109 S.Ct. at 1794 (plurality opinion).

words, if Dunn now has a legitimate motive that would cause Neil's discharge, then reinstatement or front pay would go beyond making Neil whole and would unduly trammel Dunn's freedom to lawfully discharge employees. Because Neil would no longer be employed at Dunn, she also would not be entitled to an injunction against further unlawful practices. *See Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982) (if Title VII plaintiff not reinstated, injunction "unlikely" because such injunction would not affect her). *See also In re National Airlines, Inc.,* 700 F.2d 695, 697 (11th Cir.) (injunction not mandated under Title VII where it is clear that unlawful practice will not recur), *cert. denied,* 464 U.S. 933, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983). *Cf. Powers v. Chicago Transit Authority,* 890 F.2d 1355, 1360 (7th Cir.1989) (in § 1983 employment discrimination suit, plaintiff's unethical conduct relevant to right to injunction).

With regard to the period of Title VII backpay for the allegedly retaliatory discharge, the boundary between the competing concerns shifts such that Neil's backpay period should not terminate prematurely unless Dunn proves that it would have discovered the after-acquired evidence prior to what would otherwise be the end of the backpay period in the absence of the allegedly unlawful acts and this litigation.[12] In this way, both Neil's interest in make-whole relief and Dunn's interest in freedom to make lawful decisions will be served. We realize that an alternative approach exists—to end the period of backpay on the day that Dunn actually learned of the after-acquired evidence in the course of litigating this case. *See Smith,* 876 F.2d at 1319 n. 2. *Cf. Milligan-Jensen,* 767 F.Supp. at 1417 (reduced backpay award by 50% due to after-acquired evidence). We reject this alternative approach for two reasons. First, it overlooks the teaching of *Price Waterhouse* and *Mt. Healthy* that the victim should be placed in no worse a position than if she were not a member of a protected class and had not engaged in protected conduct—if the allegedly unlawful acts did not occur, and this litigation never existed, then Dunn would not have discovered Neil's prior conviction at her deposition. Moreover, the alternative approach would have the perverse effect of providing a windfall to employers who, in the absence of their unlawful act and the ensuing litigation, would never have discovered any after-acquired evidence.

Further, we fail to see how after-acquired evidence which would cause Neil's legitimate discharge could affect the availability of declaratory relief for either of Neil's Title VII claims, *see* 28 U.S.C.A. § 2201 (West Supp.1991), or of nominal damages for Neil's hostile-environment sexual harassment claim, *see Henson,* 682 F.2d at 905. The after-acquired evidence could not have been discovered in time to alter the employment relationship so as to obviate these forms of relief.[13]

The effect of after-acquired evidence on the more customary forms of Title VII relief will determine the manner in which such evidence affects the availability and amount of an attorney fee award. *See* 42 U.S.C.A. § 2000e–5(k) (West 1981). With regard to the availability *vel non* of a fee award, if Neil succeeds in obtaining at least " 'some of the benefit ... sought in bringing suit' " or a " 'material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute' " despite the after-ac-

12. If Neil establishes that her discharge was in retaliation for asserting her Title VII rights, then she will be entitled to a presumption that a backpay award is appropriate. *See Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1526 (11th Cir.1991). Thus, we find that the after-acquired evidence has no bearing on the availability *vel non* of a backpay award.

13. For a similar reason, Dunn's contention that knowledge of the narcotics conviction would have caused Dunn not to hire Neil in the first place is misguided except insofar as evidence of this contention constitutes indirect proof that Dunn would have discharged Neil for lying on her application regarding the narcotics conviction. By virtue of its after-acquired status, evidence of Neil's conviction could not have influenced the decision regarding whether to hire Neil because that decision occurred well before the after-acquired evidence ever would have been discovered.

quired evidence, then she will be a "prevailing party" and thus entitled to an attorney fee award of some sort. *Walker v. Anderson Elec. Connectors*, 944 F.2d 841, 846 (11th Cir.1991) (quoting *Texas Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–93, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989)). However, assuming that Neil does cross the threshold inquiry and becomes entitled to a fee award of some kind, after-acquired evidence may decrease the amount of the award under traditional attorney fee principles. *See Texas Teachers*, 489 U.S. at 789–90, 109 S.Ct. at 1491–92 (discussing fee award under 42 U.S.C.A. § 1988 (1981)); *Hensley v. Eckerhart*, 461 U.S. 424, 433–40, 103 S.Ct. 1933, 1939–43, 76 L.Ed.2d 40 (1983) (same). *See also Walker*, 944 F.2d at 846 n. 10 (attorney fee standards under § 1988 same as those under § 2000e–5(k)).

Because the traditional remedial possibilities under Title VII and the EPA are quite similar, we find the foregoing general approach applicable to Equal Pay Act claims as well. *Compare* 42 U.S.C.A. § 2000e–5(g) *with* 29 U.S.C.A. § 216(b) (West Supp. 1991). We acknowledge that the liquidated damages provision of the EPA varies from the "make whole" purpose of Title VII relief. *See White and Son*, 881 F.2d at 1013 (referring to this aspect of EPA relief as "punitive"). Nevertheless, we find this distinction insignificant because the calculation of the liquidated damages under the EPA is wedded to the "make whole" concept—the liquidated damages provision of the EPA provides the plaintiff with double the amount of "make whole" relief. *See id.*

Thus, after-acquired evidence should affect the prospective remedies of reinstatement, front pay, and injunctive relief under the EPA in the same way it affects them under Title VII. *Cf.* 29 U.S.C.A. § 216(b) (private plaintiff alleging inadequate compensation not provided right to injunctive relief). Moreover, the effect of after-acquired evidence on the time period for the EPA retaliatory discharge remedies of lost wages and liquidated damages is analogous to its effect on the Title VII backpay period.[14] Further, as with Title VII, we find that the after-acquired evidence in this case cannot affect the availability of declaratory relief for either of the EPA claims. We also find that, similar to nominal damages for hostile-environment sexual harassment, the after-acquired evidence cannot affect the availability of unpaid equal wages and liquidated damages for the EPA inadequate compensation claim.

With regard to the effect of after-acquired evidence on attorney fee awards under the EPA, we note that the test for the availability *vel non* of a fee award differs slightly under the two statutes. *Compare* 42 U.S.C.A. § 2000e–5(k) (plaintiff must be "prevailing party") *with* 29 U.S.C.A. § 216(b) (plaintiff must obtain "judgment"). The Title VII standard appears to be more stringent than the EPA standard. *See Walker*, 944 F.2d at 846–47 (possible to obtain judgment and not be "prevailing party" and implying that judgment is necessary but not sufficient for entitlement to Title VII fee award). That is, in marginal cases, an EPA plaintiff may be entitled to a fee award because she has a judgment whereas a similarly-situated Title VII plaintiff may not be so entitled because, although she obtained a judgment, the contents of that judgment might not suffice to qualify her as a prevailing party. Thus, after-acquired evidence is somewhat less likely to preclude an EPA fee award than a Title VII fee award. However, with regard to EPA fee award amounts, we contemplate that the analysis will generally proceed in a manner quite similar to the approach under Title VII. *See Jones v. Central–Soya Co.*, 748 F.2d 586, 588–89 n. 1 (11th Cir.1984) (equating standards governing amount of EPA fee

14. If Neil establishes that her discharge was retaliatory, then Dunn will be liable for her lost wages. *White and Son*, 881 F.2d at 1012. Moreover, unless Dunn then shows that it acted in good faith on a reasonable belief that it was not violating the EPA, Neil will be entitled to liquidated damages. *Id.* Because the after-acquired evidence is irrelevant to the mental state underlying Neil's discharge, such evidence cannot affect the availability of liquidated damages.

award with those governing Title VII and § 1988 awards).

## V. APPLICATION

Applying the foregoing principles to this case, we find no genuine issue of fact regarding whether the after-acquired evidence would have caused Dunn to discharge Neil from her job as a flagperson on road crews absent any unlawful motive. The employee handbook, a copy of which Neil admitted to possessing in her deposition, details Dunn's policies against drug use and falsification of records and authorizes termination for both. Two of Neil's own witnesses who were former Dunn employees testified in depositions that they understood that they could be fired if they lied on their applications.[15] Dunn's Safety and Training Director stated in an affidavit that Dunn tests all of its applicants for drug use and refuses to hire those who test positive. Finally, Dunn's Manager of Administration and Accounting and its Safety and Training Director both stated in affidavits that Dunn had policies against falsification of documents and drug use, that Neil would not have been hired had she been truthful in her application, and, most importantly, that Neil would have been fired for lying on her application if Dunn had been aware of the lie. Faced with this unrelenting evidence, Neil has failed to produce any significantly probative evidence to rebut Dunn's showing that it would have fired her for her application fraud. She relies solely on her own sworn statement that she thought one Dunn employee had lied on her application and retained employment with Dunn; however, she offered no evidence whatsoever indicating that Dunn *knew* that an employee had lied on an application regarding any subject (let alone narcotics convictions) and thereafter failed to terminate that employee. Dunn's evidence is ample and persuasive, and Neil's evidence consists solely of her own sworn statement regarding her unsubstantiated beliefs which fail to directly address the precise issue involved.

Thus, the prospective remedies of reinstatement, front pay, and injunctive relief are unattainable with respect to all of Neil's federal claims. Our next inquiry concerns whether the after-acquired evidence mandates an early end to any period of backpay under Title VII or lost wages and liquidated damages under the EPA. Dunn has introduced no evidence whatsoever indicating when it would have discovered the after-acquired evidence if Neil had not been female and had not asserted her rights under Title VII or the EPA.[16] Thus, summary judgment is not proper regarding a premature termination of any period of backpay, lost wages, or liquidated damages. Finally, the after-acquired evidence in this case does not in and of itself prevent a fee award regarding any of the federal claims; however, if a fee is ultimately awarded, then the after-acquired evidence would affect the amount.[17]

Consequently, Neil cannot as a matter of law obtain relief for her federal claims in the form of reinstatement, front pay, or an injunction. Dunn is entitled to partial summary judgment only as to these specific claims for relief.[18]

**15.** One of these witnesses is Neil's erstwhile coplaintiff, Becky Wallace. Wallace ceased to be a party to this litigation on April 18, 1991 when the court granted a joint motion, filed by Wallace and Dunn, to dismiss Wallace's claims.

**16.** Because the record is silent on this issue, we need not at this time specify the type or quantum of evidence that should be required of an employer who seeks an early end to a period of backpay, lost wages, or liquidated damages based on after-acquired evidence.

**17.** Neither party has argued the applicability of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991) (the Act). We therefore have refrained from expressing any opinion on this issue, and have applied Title VII as it existed when this suit was commenced, prior to the passage of the Act. As a result, we have no occasion to consider the effect of after-acquired evidence on the damages remedies provided in the Act. *See id.* § 102, 105 Stat. at 1072–74. We note, however, that the approach we have adopted is fully consistent with the treatment accorded mixed-motive employer decisions by the Act. *See id.*, § 107, 105 Stat. at 1075–76.

**18.** Summary judgment may be granted to a defendant regarding only part of a claim for relief. Fed.R.Civ.P. 56(b).

## VI. CONCLUSION

We REVERSE the denial of Dunn's motion for partial summary judgment and REMAND for further proceedings not inconsistent with this opinion.[19]

GODBOLD, Senior Circuit Judge, dissenting:

This is a case of alleged job discrimination in which in her application for employment plaintiff had given false information on a subject matter relevant to the employing process and important to the position sought. Plaintiff would not have been hired if she had not lied on her application, thereby concealing her recent conviction on drug charges. I would straightforwardly hold that plaintiff does not have standing to maintain this suit.

This fraud-in-application case must be distinguished from that of an employee who has properly come into the status of employee and, during employment, commits misconduct that is discovered by the employer after it is sued for employment discrimination, and the misconduct is then asserted as a defense on the ground employer would have fired the employee had it known of the wrong.[1] We can decide that case when it is presented to us.

Plaintiff applied for employment with Dunn Construction Company in April 1988 as a "flagger" to flag traffic on highway construction work. Her application for employment asked whether she had been convicted of a crime, and she checked the "no" box. She was hired a few days after applying and worked until she was fired in February 1990 on stated grounds of insubordination. She then filed this suit alleging sexual harassment and retaliatory discharge under Title VII[2] and inadequate pay and retaliatory discharge under the Equal Pay Act.[3]

During discovery Dunn found that 11 months before plaintiff's employment she had pleaded guilty to possession of cocaine and marijuana, a felony under the Uniform Alabama Controlled Substance Act, and had been placed on probation. Also, in her deposition, plaintiff testified that at her employment interview she was asked whether she "did drugs" and replied "I told him, no." Ex. 48, part A, p. 42.

It is self-evident that, for a flagperson on highway construction, freedom from drug use or possession is a qualification highly significant to the employer and the public. The summary judgment record shows without dispute that Dunn would not have hired plaintiff had it known of her conviction, and the opinion for this court holds just that. Dunn administers pre-employment drug testing and will not employ any person who tests positive. There is no evidence that Dunn has ever employed an applicant who failed the drug screen. The employment application warns the applicant against making false statements. The company handbook firmly states company policy against falsification of documents and against drug use, and it authorizes termination for either. Under the circumstances of this case plaintiff's suit should be dismissed.

### I. The issue for decision

Dunn has presented to us two legal reasons why it should not be liable to plaintiff for alleged employment discrimination. The first goes to reason for discharge—Dunn says that under its rules it would have fired plaintiff because she falsified her employment application, i.e., the act of falsification and the resulting concealment of her drug conviction, if known, would have been proper cause for termination and is to be treated as such though discovered after she was fired. The second goes to plaintiff's standing—Dunn says that by plaintiff's misrepresentation she obtained employment that otherwise she would not

19. Nothing in this opinion should be understood as affecting in any way Neil's state law claims.

1. As discussed below, this was the situation presented in *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988).

2. See 42 U.S.C. §§ 2000e–2(a)(1) and 2000e–3(a) (West 1981).

3. See 29 U.S.C. § 206(d)(1), 215(a)(2) and § 215(a)(3) (West 1965).

have obtained, therefore she lacks standing, or status as an employee, to maintain this suit.

In the joint motion to certify issues for appeal the parties agreed that one of the issues to be addressed was the second reason, whether plaintiff's complaint must be dismissed for lack of standing upon proof of falsification that, if discovered prior to the hiring decision, would have resulted in a decision not to hire. The opinion for this court addresses only the first, or "reason to fire" issue. It characterizes the standing issue as a mere "misguided" contention, irrelevant except as indirect proof that Dunn would have discharged plaintiff for lying on her application, and, in that context, treats it as inconsequential. The second issue is not reached because considered to be subsumed in the first. See page 1182, n. 13.

II. The significance of false job applications

The problem of false applications for employment is major in scope. Reported cases, most of them recent, demonstrate the problem. In *Churchman v. Pinkerton's, Inc.*, 756 F.Supp. 515 (D.Kan.1991), plaintiff, in her application for a security guard position, did not reveal her prior use of drugs or her prior hospitalization for attempted suicide with an overdose of "speed." She did not list all of her prior residences, which frustrated the employer's checking her prior police records. She did not reveal prior discharges for cause or her history of moving from job to job. In *Mathis v. Boeing Military Airplane Co.*, 719 F.Supp. 991 (D.Kan.1989), plaintiff was hired as clerk-typist. Her employment application failed to reveal that she had pleaded guilty to a felony charge of defrauding a state agency and had been put on probation, had resigned from her federal government job as clerk-typist to avoid a suspension, and had been terminated for poor performance by three federal agencies.

The employer in *Johnson v. Honeywell Information Systems, Inc.*, 955 F.2d 409 (6th Cir.1992), advertised to fill a personnel relations position, specifying a college degree as required. Plaintiff applied, representing that she had a degree when she actually had completed only four college courses. In *Morgan v. City of Jasper*, 959 F.2d 1542 (11th Cir.1992), recently decided by this circuit, plaintiff falsified her employment application to a city by misstating the reason she had been terminated by a prior employer, which had fired her for mishandling funds. The city employed her to work in a job where she would handle funds. She was discharged and then sued, claiming wage discrimination and retaliatory discharge. Before her discrimination case even came to trial she was convicted of stealing money from the city, sentenced to five years imprisonment, and ordered to pay restitution exceeding $13,000.

The plaintiff in *Smallwood v. United Air Lines, Inc.*, 728 F.2d 614 (4th Cir.) *cert. den.*, 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984), charged age discrimination by an airline that refused to process his application for a job as pilot. He was denied relief because he had not revealed on his application that he had been discharged by another airline for work-related misconduct. A plaintiff who charged that he had been discharged as jailer because of his race falsely concealed on his application that he had a conviction for criminal trespass and another conviction for assault (jail sentence suspended for two years probation). *Washington v. Lake County*, 762 F.Supp. 199 (N.D.Ill.1991), *aff'd* 969 F.2d 250 (7th Cir.1992). In *Livingston v. Sorg Printing Co., Inc.*, 49 Fair Emp.Prac. Cases (BNA) 1417 (1989), plaintiff's resume and job application gave "material false information regarding his prior employment and experience."

The applicant in *O'Driscoll v. Hercules, Inc.*, 745 F.Supp. 656 (D.Utah 1990), falsified her age on several occasions, the ages of her children, the time of high school graduation, and the fact that she had not previously applied for a job with the employer. In *Sweeney v. U-Haul Co. of Chicago Metroplex*, 55 E.P.D. ¶ 40,598, 1991 WL 1707 (N.D.Ill.1991), plaintiff's application contained 11 misrepresentations concerning numerous reasons for discharges

from prior employments and warnings of other possible discharges, plus significant gaps in her employment history.

In every one of these false application cases the plaintiff alleging discrimination—firing, hiring, wages, retaliation, race, age—was denied relief, in most cases on summary judgment.

A full survey of the caselaw on predischarge misconduct discovered after termination appears in *M.H. Rubinstein, The Use of Pre-discharge Misconduct Discovered After An Employee's Termination as a Defense in Employment Litigation,* XXIV Suffolk University Law Review, No. 1 (1990). At p. 1, n. 2, the author refers to a survey disclosing that one in ten firms has found applicants lying on resumes, and he states that in arbitral forums the most common form of employment application falsification involves criminal records and medical histories.

The present case is a paradigm of the problem of false employment applications. An employer is entitled, in its own interest, to seek a drug-free work force. Freedom from drug use affects efficiency, job attendance, and relations of the employee with others. It embraces possible harm to fellow workers, standards of the work force, medical care, possibly public perception of the company, and a host of other interests. For some positions the interests of the public are directly implicated, as in the case of a flagperson, whose job concerns public safety and the directing of moving vehicles, security guards, jailers, persons handling public funds, and airline pilots. The employer is at risk of suits for harm to the public on respondeat superior or negligent hiring grounds and for workmen's compensation liability to other employees and the employee herself. Dunn is subject to the Drug Free Workplace Act of 1988, 41 U.S.C. § 701, one of whose provisions subjects it to suspension, termination or debarment from government work if sufficient number of its employees have been convicted of violations of criminal drug statutes occurring in the workplace. Section 701(b)(1)(C). Dunn is entitled to screen out applicants whose records identify them as a source for these risks.

III. Rationale for decision

Under Title VII a charge may be filed "by or on behalf of a person claiming to be aggrieved." See § 706(b).

> The courts have generally used traditional notions of "standing" in order to decide whether an individual is sufficiently "aggrieved" to challenge a particular employment practice in a court suit brought by a private plaintiff.

B.L. Schlei and Paul Grossman, *Employment Discrimination Law,* p. 987 (BNA 1983).

> This relatively simple statutory provision has given rise to considerable litigation involving the question of whether a particular party filing a Title VII charge or acting as a plaintiff in a Title VII case has "standing" to prosecute claims of discrimination in a variety of circumstances.

*Id.* at 986. In these cases "standing" is analyzed in the constitutional sense of Article III. *Id.* at 986, n. 27.

Under some circumstances, which I need not develop here, a charging party may seek to file a charge alleging personal aggrievement because of discrimination against a protected group of which the charging party is not a member. See discussion in *Employment Discrimination Law, supra,* pp. 989–90. But the case before us is the usual one: plaintiff claims to be a member of the affected group allegedly discriminated against and personally subjected to the adverse employment practice. *Id.* at 987. I would hold that within the meaning of Title VII and the Equal Pay Act plaintiff is not a member of the affected group allegedly discriminated against and is not an "aggrieved" person. Put differently, Congress did not intend that under the circumstances of this case a plaintiff is within the protected class. Her status does not give her standing to sue. In traditional standing language, she is not in the "impact area." She purports to be, but the status that would place her there

was fraudulently obtained and but for her fraud would have been denied.

There is a national policy against discrimination. But the existence of that policy does not of itself establish that a particular plaintiff has status or standing to sue. Nor does that national policy depend upon, or envision, implementation or vindication by a false claimant like the plaintiff.

There is no dispositive magic in the word "employee" or in having one's name on the payroll. Congress would not have intended that standing be conferred on an employee who had circumvented the hiring process and had her name placed on the payroll by a collaborator, or, worse yet, having had her name fraudulently entered on a "padded" payroll, never reported for work but received paychecks that were split between her and her collaborator. These may be "far out" examples but not much farther out than the plaintiff who fraudulently misuses the employment process to get a job she would not otherwise have obtained and thereby creates significant risks to employer and public.

The enforcement provisions section of Title VII focuses upon the necessity for employee status.

> No order of the court shall require ... the hiring, reinstatement, or promotion of an individual *as an employee*, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title.

42 U.S.C. § 2000e–5(g)(2)(A) (emphasis added).

While the courts have almost unanimously denied relief in false application cases where the falsity is relevant and the employer has proved it would not have hired, they have not been either uniform or clear in reasons for decision. Frequently decisions have not distinguished fraud-in-application cases and on-the-job misconduct cases, and the ground for decision is at times no more than a conclusory statement that plaintiff is not entitled to relief or has not been injured. In *Summers,* considered at length in the opinion of my fellow judges, plaintiff was properly hired. His late-discovered on-the-job misconduct was described as relevant to his claim of injury and preclusive of relief or injury. *Churchman, Mathis,* and *O'Driscoll* were fraud-in-application cases but relied on *Summers. Johnson v. Honeywell* was an application fraud case brought under a state discrimination law. The court looked to Title VII by analogy and followed *Summers,* and it spoke in terms of plaintiff's not being entitled to relief. Other cases have treated plaintiff's fraud as a failure to make out a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). I.e., *Oak Lawn v. Human Rights Com.,* 133 Ill.App.3d 221, 88 Ill.Dec. 507, 478 N.E.2d 1115 (1st Dist.1985); *Livingston v. Sorg Printing Co., Inc., supra.*

The opinion for this court recognizes that in employment cases it is appropriate to make after-the-fact inquiry to determine what decisions would have been made had all the facts been known. See *Mt. Healthy City School Dist. Bd. of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Thus, it is correct to find—as this court does—that plaintiff's misrepresentation was relevant to the position sought and that Dunn would not have hired plaintiff had it known the truth. The court goes on to hold, however, that *Mt. Healthy* does not permit after-acquired evidence to ignore the time lapse between the allegedly unlawful act by the employer and the time when the employer would have discovered the plaintiff's falsification and drug conviction had there been no discrimination and no suit. For reasons I discuss, this analysis is not appropriate because, once the determinations permitted by *Mt. Healthy* have been made, the plaintiff's lack of standing emerges and the case ends.

After the court rejects what it calls the "affirmative defense" rule of *Summers* it accepts *Summers* as a limitation on relief.

It then develops an enormously complicated body of law concerning possible damages under Title VII and the Equal Pay Act, the various remedies possibly available to the plaintiff, and it describes the evidence that the employer must come forward with to limit its exposure. I do not attempt to address these difficult areas beyond saying that they should not be the subject of decision in this case and that Dunn cannot properly be subjected to this body of law by the suit of this plaintiff.

We should grasp the nettle, decide the false application case that is before us, and place our decision squarely on standing grounds. Such a decision would help to bring understanding and order to a confused and disorderly field. It is not enough to say plaintiff is not entitled to relief or that she has not been injured. It does not suffice to set up *Summers* as a straw man and knock it down. This case is not *Summers.* The interplay of a plaintiff's status, the intent of Congress, and the interests of plaintiff, employer, and the public are different. We can address the issue of late-discovered misconduct by a plaintiff who is rightfully a member of the workforce when that case is presented to us.

Nor can we properly decide this case by hypothetical predictions of hard-hearted employers rummaging through employment records to find trivial reasons for discharging persons with late-discovered flaws in their background, or of employers sandbagging applicants by burying or destroying knowledge of fabrications to give themselves free rein to harass and fire employees for discriminatory reasons and use the information later if needed. The reported cases we have discussed, and the instant case, do not concern trivial falsities or conspiratorial concealment. The requirements that the misrepresentation be material and job-related and that the employer would not have hired had it known the truth serve to curb employer abuse. The Sixth Circuit pointed this out in *Johnson v. Honeywell.*

> In order to provide a defense to an employer in a wrongful discharge claim, the after-acquired evidence must establish valid and legitimate reasons for the termination of employment. As a general rule, in cases of resume fraud, summary judgment will be appropriate where the misrepresentation or omission was material, directly related to measuring a candidate for employment, and was relied upon by the employer in making the hiring decision. *See Churchman v. Pinkerton's Inc.,* 756 F.Supp. 515, 520 (D.Kan.1991). These requirements are necessary to prevent an employer from combing a discharged employee's record for evidence of any and all misrepresentations, no matter how minor or trivial, in an effort to avoid legal responsibility for an otherwise impermissible discharge.

955 F.2d at 414. To the same effect, see *O'Driscoll, supra,* 745 F.Supp. at 659 and *Churchman, supra,* 756 F.Supp. at 520. An Illinois state court rejected the "rummaging through the file" argument on the ground that plaintiff could not take advantage of her own misdeeds and convert her spurious statements into a shield against the employer. *Oak Lawn, supra,* 133 Ill. App.3d at 225, 88 Ill.Dec. at 510, 478 N.E.2d at 1118.

This court has not addressed the dispositive issue of standing. It should do so and dismiss this case.