Richard L. WELCH, Appellant,

v.

LIBERTY MACHINE WORKS, INC., a Missouri Corporation, Appellee.

No. 93–2670.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1994.

Decided May 6, 1994.

David M. Heimos, St. Louis, MO, argued, for appellant.

Henry F. Luepke, St. Louis, MO, argued (Michael A. Fisher and Henry F. Luepke, on the brief), for appellee.

Before BEAM, Circuit Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and STROM,* Chief District Judge.

BEAM, Circuit Judge.

This case is one of first impression for this circuit and requires us to determine whether after-acquired evidence of an employee's misrepresentation on a job application bars recovery for discriminatory discharge. We find that it does, but that the district court improperly granted defendant's motion for summary judgment. We therefore reverse and remand to the district court.

On November 1, 1990, Liberty Machine Works, Inc. (Liberty) hired Richard L. Welch for a 90–day probationary period as a machinist. Immediately prior to being hired by Liberty, Welch worked as a machinist for a month at K & M Machine Works, Inc. (K & M). K & M fired Welch because of unsatisfactory performance. As part of its hiring process, Liberty requires applicants to complete an employment application, including an "accurate, complete full-time and part-time employment record." The application states that "any misstatement or omission of fact on this application shall be considered cause for dismissal." Unbeknownst to Liberty, Welch intentionally falsified his resume and his employment application: Welch did not inform Liberty of either his employment at K & M or that K & M fired him after only one month for unsatisfactory performance.

In early January 1991, Welch informed Liberty that he had developed a fistula requiring surgery. The surgery would have been covered under Liberty's employee benefit plan. Liberty, however, discharged Welch a week later, purportedly due to lack of work. Welch filed suit, alleging wrongful discharge in violation of ERISA and handicap discrimination in violation of the Missouri Human Rights Act. Welch contended that Liberty terminated him to avoid liability for his medical expenses. During discovery, Liberty deposed Welch and learned that Welch had intentionally omitted from his employment application and resume his work

with, and subsequent firing from, K & M. Liberty then filed a motion for summary judgment, supported by an affidavit from its president, Kurt Maier. In his affidavit, Maier stated that "Liberty would never have hired Welch if he had disclosed to Liberty that his most recent employer, K & M Machinery, had just fired him after only one month because they were not satisfied with Welch's work as a machinist." In addition, Maier stated that Liberty would have terminated Welch for omitting this information from his application. Based on· Maier's undisputed affidavit, the district court granted Liberty's motion for summary judgment. In so doing, the court adopted the proposition that an employee's serious misconduct bars recovery on a claim of discriminatory discharge. Welch timely appealed the district court's grant of summary judgment. On appeal, Welch argues that after-acquired evidence of employee misrepresentation should bar recovery only when the misrepresentation was material to the employee's qualifications for employment in the first instance.

■ We review a district court's grant of summary judgment de novo. *Jones v. Coonce,* 7 F.3d 1359, 1362 (8th Cir.1993). We examine the record in the light most favorable to the nonmovant, and affirm a grant of summary judgment when there is no dispute as to any genuine issue of material fact and the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

In granting Liberty summary judgment, the district court anticipated that we would adopt the rule from *Summers v. State Farm Mutual Automobile Insurance Co.,* 864 F.2d 700 (10th Cir.1988). In *Summers,* the plaintiff alleged that he was discharged because of his age and religion. *Id.* at 702. His employer asserted that it terminated Summers because of an unprofessional attitude with customers and co-workers. *Id.* at 701. The company had previously disciplined Summers for falsifying company documents and informed him that he would be fired for any future falsehoods, but his falsifications were not the basis for his subsequent termination.

* The HONORABLE LYLE E. STROM, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

*Id.* at 702–03. However, during preparation for trial, the company learned that Summers had falsified additional documents after being disciplined. *Id.* at 703. The Tenth Circuit granted the company summary judgment. The court held that while after-acquired evidence of fraud cannot be cause for the termination at issue, the evidence "preclude[s] the grant of any present relief or remedy." *Id.* at 708.

In reaching its decision, the court relied on the mixed motive analysis of *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–86, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977): "The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse position than if he had not engaged in the [conduct for which he allegedly was discharged]." In finding that Summers was in no worse position because the company would have fired him anyway had it known of his additional falsification, the Tenth Circuit analogized that:

> The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a "doctor." In our view, the masquerading doctor would be entitled to no relief and Summers is in no better position.

*Id.*

Several other circuits have followed *Summers* and adopted the rule that after-acquired evidence of an employee's misrepresentation bars recovery for a discriminatory discharge when the employer would not have hired, or would have fired, the employee had it known of the misconduct. *See Dotson v. United States Postal Serv.*, 977 F.2d 976 (6th Cir.1992); *Washington v. Lake County*, 969 F.2d 250 (7th Cir.1992).[1]

The Eleventh Circuit rejected the *Summers* rule that after-acquired evidence can be a defense to a Title VII claim, but acknowledged that after-acquired evidence is relevant to the issue of relief. *Wallace v. Dunn Const. Co.*, 968 F.2d 1174, 1181 (11th Cir. 1992). Primary to the *Wallace* court was the concern that the *Summers* rule created a perverse incentive contrary to the purposes of Title VII. *Wallace* feared that an employer would feel no need to avoid discriminatory conduct because it could escape liability for an unlawful discharge by rummaging through an employee's background after the fact to create "legitimate" reasons for the firing. *Id.* at 1180.

■■■■ Mindful of the concerns expressed by the *Wallace* court, we find that the *Summers* rule is the better rule. In the application fraud context, therefore, we find that after-acquired evidence of employee misrepresentation bars recovery for an unlawful discharge, if the employer establishes that it would not have hired the employee had it known of the misrepresentation.[2] We do not believe that an employee should benefit from his or her misrepresentation. However, in granting Liberty summary judgment, the district court relied on Maier's affidavit. Allowing Liberty, in this instance, to establish a purported policy of this nature solely on the contents of Maier's affidavit seems to us to be contrary to the dictates of *Mt. Healthy*. In *Mt. Healthy*, the employer knew of both the legitimate and the illegal grounds for the firing decision at the time the decision was made. In the after-acquired evidence context, the employer knows only the presumed illegal ground for the discharge. Therefore,

---

**1.** The *Washington* court examined the relationship between a "would not have hired" and the "would have fired" standard. The court believed that this distinction was important because it envisioned situations when a company might be more reluctant to fire an individual who had proved able on the job. *Washington*, 969 F.2d at 254. The Seventh Circuit, drawing on mixed motive case law, determined that, in an application fraud case when the employee was later fired for an unrelated reason, the appropriate inquiry is whether the employer would have fired the employee upon discovery of the falsehood. *Id.* at 256. The *Washington* court found that the "would have fired" standard "weakens the incentive for an employer to engage in a fishing expedition" for minor falsehoods on the employee's resume or application. *Id.*

**2.** Our holding does not vitiate the "would have fired" prong of the *Summers* rule. We simply do not need to discuss it under the circumstances of this appeal.

we believe that the employer bears a substantial burden of establishing that the policy pre-dated the hiring and firing of the employee in question and that the policy constitutes more than mere contract or employment application boilerplate. Liberty presented no other evidence of its policies. By itself, Maier's affidavit is a self-serving document and does not establish the material fact that Liberty would not have hired Welch but for the misrepresentation. As the movant for summary judgment, Liberty bore the significant burden of establishing that it had a settled policy of never hiring individuals similarly situated to Welch. Because of our concerns about creating perverse incentives for employers, we find that Maier's affidavit alone is insufficient to establish this material fact.

We note that other circuits have upheld summary judgments in the application fraud context based primarily on employer affidavits. *See Johnson v. Honeywell Information Sys.*, 955 F.2d 409, 414 (6th Cir.1992); *Washington*, 969 F.2d at 256–57. We do not decide whether an undisputed employer affidavit could, in some circumstances, establish the requisite material fact of a particular employer's policy. Rather, we find merely that in this case, Maier's affidavit was not sufficient. We find, therefore, that Liberty has not established that no material facts are at issue and we remand to the district court for further proceedings consistent with this opinion.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

In my view, *Wallace v. Dunn Const. Co.*, 968 F.2d 1174 (11th Cir.1992) has the better of the argument on the issue of after-acquired evidence. The purpose of the relevant provisions of ERISA and the Missouri Human rights Act is to deter discriminatory acts and compensate those who have suffered from them. I respectfully suggest that the court errs in concluding that if defendant can show that it would never have hired Mr. Welch but for his misrepresentation, then Mr. Welch will be in no worse position than he would have been but for the alleged illegal act. The crucial points are that the defen-

dant did hire him and did not know of the facts that might have led to Mr. Welch's discharge until it discovered them because suit was filed against it. The defendant might never have learned of those facts, or it might have learned of them fortuitously at some later time. Until it did so, those facts could hardly provide an excuse for termination, since they could not have provided any part of the defendant's motive. If Mr. Welch is not compensated for losses suffered between the time he was illegally fired and the time he would have been fired on account of the discovery of relevant facts, he is not in the same position he would have been in but for a wrong committed against him, and the purpose of the protective legislation is entirely lost.

Nor can I subscribe to the court's conclusion that my view of the matter would allow an employee to "benefit from his or her misrepresentation." Fraudulent activity, of course, gives rise to civil remedies for damages and rescission, and, in proper cases, even for criminal prosecution. For the sake of argument, let us assume that Mr. Welch was a tortfeasor: That fact could not possibly excuse the commission of a tort against him. I doubt that the court would allow the defendant, for instance, to justify a battery on Mr. Welch on the ground that he would not have been available for battering but for his misrepresentations. I cannot see how this case stands on a different footing. The plaintiff does not seek to benefit from his misrepresentation, if any. He seeks simply to have the law applied to him in an even-handed way. Under general tort principles, even a trespasser is entitled to the benefit of the rule that the offended landowner may not intentionally injure him.

In short, this case seems to me to involve a moral hazard similar to the one that T.S. Eliot had in mind when he wrote: "The last temptation is the greatest treason: To do the right deed for the wrong reason." I think that the objects of deterrence and compensation both require us to examine a defendant's mind for what it contained, not what it might have contained, to determine whether he has

committed a wrong. I therefore respectfully dissent.