**Dian L. CASTLE, Plaintiff,**

v.

**Lloyd M. BENTSEN, Secretary of the Department of Treasury, Defendant.**

Civ. No. 93–2643 (CRR).

United States District Court, District of Columbia.

Nov. 8, 1994.

Michael Kator and Tracy Hilmer of Kator, Scott, & Heller, Washington, DC, for plaintiff.

Eric H. Holder, Jr., U.S. Atty., along with John D. Bates, Madelyn E. Johnson, and Sherri L. Evans, Asst. U.S. Attys., for defendant. Larry J. Stein, Sr. Trial Atty., Office of the Comptroller of the Currency, of counsel.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court at this time are the parties' respective Proposed Findings of Fact and Conclusions of Law on the issue of equitable relief for the Plaintiff in the above-captioned case. Also before the Court is the Defendant's Motion for Reconsideration of the Court's ruling that evidence of the Plaintiff's employment with the Texas Department of Mental Health and Retardation is not admissible as evidence of the Plaintiff's failure to mitigate damages.

Because the Court finds that the Plaintiff is only entitled to backpay until September 30, 1992, the date upon which the Defendant discovered evidence of the Plaintiff's plagiarism of the book entitled *The Coach* and other on-the-job training materials, the Court, as counsel for both parties suggested at the hearing on November 7, 1994, need not reach the issues raised in the Defendant's Motion. Accordingly, said Motion shall be declared Moot.

What follows shall constitute the Court's findings of fact and conclusions of law on the issue of equitable relief, as required by Rule 52(a) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

The Plaintiff, Dian L. Castle, was employed with the Office of the Comptroller of the Currency ("OCC") from February 11, 1991 to January 10, 1992, on which date she was terminated during her probationary period. Tr.Exh. 19. On December 30, 1993, the Plaintiff filed a Complaint alleging, in pertinent part, intentional discrimination on the basis of her sex and retaliation under Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e–2 *et seq.* A jury trial was held on these two claims and, on November 4, 1994, the jury returned a verdict finding that the Plaintiff had proved, by a preponderance of the evidence, each element of her claim of sex discrimination, but found that the Plaintiff had not proved her retaliation claim. The jury awarded the Plaintiff $75,000 in compensato-

ry damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

On November 4, 1994, counsel for both parties entered into an oral stipulation that any and all unresolved issues concerning backpay, front pay and reinstatement shall be committed to the sole and sound discretion of the Court, sitting without a jury, to be determined on the basis of the entire record. On November 7, 1994, a hearing was held on the issue of the Plaintiff's entitlement to such equitable relief.

Included in the trial record now before the Court is evidence presented by the Defendant which shows that, after the Plaintiff's discharge, the OCC learned that the Plaintiff had engaged in misconduct which would have led to her termination had the Defendant known of such evidence at the time of the Plaintiff's employment. In particular, the Defendant submitted evidence that the Plaintiff made misrepresentations on her Form 171, or initial application for employment at the OCC,[1] and that the Plaintiff plagiarized the book *The Coach*, as well as other on-the-job training ("OJT") materials, in violation of the copyright laws of the United States.

It is undisputed that, during her employment with the OCC, the Plaintiff produced a training video script for distribution within the OCC. The OCC hired actors and turned the script into a video, then made copies which were sent to all district personnel for use as a teaching aid for bank examiners. Tr.Test. of Gary Norton at 48. In September of 1992, another employee in the Office of Training and Personnel Development, Gwyn Robson, discovered that major portions of the video script were copied, nearly verbatim, by the Plaintiff from a published book entitled *The Coach*, by Steven J. Stowell and Matt M. Starcevich. *See Id.* at 48–49. The OCC therefore showed the script to their Law Department out of concern that, if the agency used copyrighted information, it could be subject to some penalty by the true authors. *Id.* at 49. The OCC's Law Department determined that the material was plagiarized. *Id.* Accordingly, the OCC pulled all the videos and asked its managers not to use them as a training aid. *Id.*

In presenting the video script to the OCC, the Plaintiff failed to attribute its contents to the true authors, but instead asserted that she had written the story herself, and accepted praise for the script from other OCC employees. Tr.Test. of Gary Norton at 48; Tr.Exh. 62, 63, 65; Tr.Test. of Gwyn Robson (Decl. at ¶ 5).

During her employment with the Defendant, the Plaintiff also produced an OJT aid for distribution within the agency. Tr.Test. of Dian L. Castle (Decl. at 21); Tr.Exh. 61. In September of 1992, Gwyn Robson also discovered that Dian Castle had copied major portions of these materials from training materials authored by J.H. Harliss and by Jeffrey Nelson Associates; even the page numbers of the original materials remained the same. Tr.Test. of Gwyn Robson (Decl. at ¶ 4). Ms. Castle testified that she attached a bibliography to these materials. Tr.Test. of Dian L. Castle. However, the original training materials indicate on their face that such materials may not be reproduced without permission from the authors. Tr.Exh. 59–60. There is no evidence indicating that Ms. Castle obtained such permission. *See* Tr.Exh. 61.

In September of 1992, the OCC determined that the Plaintiff had plagiarized large portions of her work. Tr.Test. of Gwyn Robson (Decl. at ¶ 2); Tr.Test. of Gary Norton at 48–49. If Ms. Castle had still been employed by the OCC at the time the OCC discovered that she had plagiarized portions of her work, the OCC would have dismissed her, based on the plagiarism.[2]

---

1. As the Court finds that backpay must be limited to the date the OCC discovered the evidence of Ms. Castle's plagiarism, September 30, 1992, it need not reach any issues concerning the alleged fraud on her 171 Form which, according to the Defendant, the OCC discovered on September 29, 1994, two years after it discovered the evidence of Ms. Castle's plagiarism.

2. In reaching this finding, the Court credits the testimony of Gary Norton to that effect. Tr.Test. of Gary Norton at 50. Mr. Norton is the Deputy Comptroller for Resource Management for the OCC, who supported the decision to terminate Ms. Castle.

Following her termination at the OCC, the Plaintiff obtained a position with the Texas Department of Mental Health and Retardation, which she began on August 10, 1992. On November 13, 1992, she was discharged from that position.[3]

### CONCLUSIONS OF LAW

■ The enforcement provision of Title VII vests in the Court the discretion to grant a Plaintiff such equitable relief as it deems appropriate pursuant to a finding that the Defendant has intentionally engaged in an unlawful employment practice charged in the Plaintiff's Complaint. 42 U.S.C. § 2000e–5(g). The statutory scheme implicitly recognizes that there may be cases calling for one remedy but not another, and such discretionary choices are left "in the first instance" to the Court's judgment guided by sound legal principles. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416–17, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975); *Ford Motor Co. v. EEOC,* 458 U.S. 219, 226–27, 102 S.Ct. 3057, 3062–63, 73 L.Ed.2d 721 (1982). Thus, under Title VII, " 'backpay is not an automatic or mandatory remedy; ... it is one the courts may invoke' in the exercise of their sound 'discretion [which] is equitable in nature.' " *Ford Motor Co.,* 458 U.S. at 226, 102 S.Ct. at 3063 (quoting *Albemarle Paper Co.,* 422 U.S. at 415, 416, 95 S.Ct. at 2370, 2371). The Court has discretion "to locate 'a just result' in light of the circumstances peculiar to the case." *Albemarle Paper Co.,* 422 U.S. at 424–25, 95 S.Ct. at 2375 (quoting *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931)).

In the instant case, the jury found that the Plaintiff proved her claim of sex discrimination, and awarded her $75,000 in compensatory damages. In the exercise of its congressionally sanctioned discretion, however, this Court now finds that the Plaintiff is not entitled to equitable relief in the form of front pay or reinstatement and that, although the Plaintiff may recover backpay, the amount of backpay must be limited to the time period following her termination on Jan-

uary 10, 1992 up to and including September 30, 1992, the date upon which the Defendant discovered evidence of the Plaintiff's plagiarism.

■ When an employer discovers after an employee's termination that the employee had engaged in misconduct during her tenure, such evidence of misconduct may be used as a means of limiting, or eliminating altogether, an employer's liability for unlawful employment practices. *See, e.g., Mardell v. Harleysville Life Ins. Co.,* 31 F.3d 1221 (3rd Cir.1994) (after-acquired evidence may preclude front pay and reinstatement and limit backpay). *See also Wallace v. Dunn Const. Co.,* 968 F.2d 1174 (11th Cir.1992), *reh'g en banc granted and opinion vacated,* 32 F.3d 1489 (11th Cir.1994) (same). *Cf. Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700 (10th Cir.1988) (after-acquired evidence of falsifications by employee precluded any relief in Title VII case); *Welch v. Liberty Machine Works, Inc.,* 23 F.3d 1403 (8th Cir.1994) (same); *McKennon v. Nashville Banner Publishing Co.,* 9 F.3d 539 (6th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994) (same); *Washington v. Lake County, Ill.,* 969 F.2d 250 (7th Cir.1992) (same).

■ As a preliminary matter, the Court finds, in the exercise of its discretion, that the after-acquired evidence of misconduct renders reinstatement and front pay for the Plaintiff's Title VII discharge claim inappropriate. *See* Brief for Amici Curiae United States and Equal Employment Opportunity Commission at 23–24, *McKennon v. Nashville Banner Publishing Co.,* U.S. No. 93–1543 (filed July 1994). Notably, the Plaintiff admits that preclusion of reinstatement and front pay may be called for in view of after-acquired evidence of misconduct. Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion in Limine and Defendant's Supplemental Memorandum of Points and Authorities as to Jury Instruction on After–Acquired Evidence and as to Special Verdict Form at 2.

---

**3.** Counsel for both parties supplied and confirmed these dates at the November 7, 1994 hearing.

With respect to the issue of reinstatement, the Court further observes that, in light of facts and circumstances underlying the instant litigation as well as the OCC's discovery of the Plaintiff's misconduct, reinstatement would result in intense hostility or friction. *See EEOC v. General Lines, Inc.,* 865 F.2d 1555, 1563 (10th Cir.1989). Indeed, several OCC employees testified that they were dissatisfied with Ms. Castle's work performance and, in some instances, with her negative attitude or contemptuous behavior. *See, e.g.,* Tr.Test. of Judith A. Walter (Decl. at ¶ 6), Donald G. Coonley (Decl. at ¶¶ 9, 11–12), Thomas M. Fitzgerald (Decl. at ¶ 3), and Frank A. Carucci (Decl. at ¶ 3). Moreover, Mr. Norton testified that had he discovered Ms. Castle's plagiarism while she was employed at the OCC, he would have discharged her on that ground alone. Tr.Test. of Gary Norton at 50. The Court finds thus that reinstatement is not proper or feasible in this case.

■ At issue, however, is the extent to which the after-acquired evidence of Ms. Castle's misconduct may be used to limit backpay.[4] Some Circuits have held that such evidence precludes any recovery. *See, e.g., Summers,* 864 F.2d at 708. At least one other Circuit has held, however, that backpay may be calculated up to the date of judgment or, alternatively, up to the date of the discovery of after-acquired evidence that would support termination, if that evidence was discovered independent of the litigation. *Mardell,* 31 F.3d at 1239–40. *See also* Plaintiff's Reply at 8 ("To the extent ... that the discovery of the after-acquired evidence is wholly independent of the litigation process, that date of discovery might also be an appropriate curtailment date for backpay."). The employer must show, however, that "based upon that evidence it indeed would have taken the same employment action at that time." *Mardell,* 31 F.3d at 1240.

■ The Court finds the latter approach, holding that backpay may be limited to the date of discovery of the misconduct if the evidence is unearthed independent of the litigation, to be the most appropriate and equitable in the context of the instant case. Accordingly, the Court finds that the Defendant's backpay liability should end on September 30, 1992, the date upon which the OCC learned of the Plaintiff's plagiarism.

In the instant case, it is undisputed that the Defendant discovered the evidence of the Plaintiff's plagiarism independent of the instant litigation. *See* Plaintiff's Proposed Findings at 1 ("Evidence concerning plaintiff's failure to obtain permission to utilize copyrighted material ... was not discovered in the course of, or as a consequence of, this litigation."). However, while the Defendant argues that the OCC would have discharged the Plaintiff based on the evidence of Ms. Castle's plagiarism had it known of such evidence, the Plaintiff asserts that such evidence is not "sufficiently clear and convincing to overcome the inference of bias created by [the proof that a discriminatory discharge occurred]." Plaintiff's Proposed Findings at 5.

The Court finds, however, that the Defendant has proved, by a preponderance of the evidence, that had the Defendant known that the Plaintiff plagiarized portions of the book *The Coach,* as well as materials used in her OJT aid for distribution throughout the agency, the Defendant would have discharged the Plaintiff on the basis of that misconduct.

When questioned by the Court during the trial, the Plaintiff admitted that she "adapted" portions of the book *The Coach* in her training video script without making proper attribution to the book's authors. *See* Tr. Test. of Dian L. Castle. This conduct thus exposed the OCC to potential legal liability for unlawful unattributed use of copyrighted material, and evidences dishonest and unethical behavior. Indeed, Gary Norton, the Deputy Comptroller for Resource Management for the OCC, testified that had the OCC discovered this evidence while Ms. Castle was an employee, the OCC would have terminated Ms. Castle at that time. Tr.Test. of Gary Norton at 50. Mr. Norton also stated that the OCC expended resources turning the script into a video and making copies of

---

4. The parties agree that after-acquired evidence should have no impact on liability. *Mardell v.*

*Harleysville Life Ins. Co.,* 31 F.3d 1221, 1228 (3rd Cir.1994).

the video for its district personnel. *Id.* at 48. Mr. Norton further testified that the OCC's Law Department examined the video and found that the material was plagiarized and that, as a result, all copies of the video were pulled and all managers instructed not to use it. *Id.* at 49.

In view of the resources spent and wasted in producing and copying this video, as well as Mr. Norton's credible testimony that the OCC's Law Department found it to be plagiarized and unusable by the agency, and his credible testimony that discovery of the plagiarism would have led to Ms. Castle's discharge, the Court finds that the OCC would have terminated the Plaintiff had it learned of her plagiarism, notwithstanding any discriminatory motive for her discharge found by the jury. Moreover, Ms. Castle does not appear to regret any wrongdoing, and the Court observes that, had the OCC discovered this misconduct during her employment, the OCC could not be expected to assume the legal liability that Ms. Castle would continue her past practice of relying on others' work, without attribution. Finally, the Court determines that, as a matter of equity, the Plaintiff should not profit now, through receipt of backpay she would not have otherwise received, from the Defendant's failure to discover her misconduct while she was employed. Accordingly, the Court finds that the Plaintiff's backpay must be limited to the date upon which the Defendant discovered that evidence independent of the instant litigation.

The Plaintiff suggests in her proposed Findings of Fact that no legal or ethical violation occurred regarding her use of the book, *The Coach,* because the proper time to seek permission to use copyrighted material is after a decision is made to use the project in which the copyrighted material is included. *See* Plaintiff's Proposed Findings at 2. The Plaintiff further suggests that, in turn, because the videotape prepared by the Plaintiff was never used, no issue of copyright infringement arose with respect to the use of the book *The Coach. Id.* With respect to the OJT materials, counsel for the Plaintiff similarly submits that Ms. Castle's attached

bibliography insulated her and the OCC from any copyright liability.

The Court, however, finds these assertions wholly unconvincing. The evidence clearly shows that the Plaintiff prepared a video script containing copied portions of the book *The Coach,* placed her name on the script, received accolades for the script from other OCC employees, but failed to make any attribution whatsoever to the script's true authors. The misconduct thus occurred when Ms. Castle copied the book without permission and took full credit for its contents. Moreover, there is no evidence indicating that she ever had any intention of making proper attribution; rather, the Plaintiff testified that she perceived her virtual word-for-word use of the book *The Coach* as a mere adaptation, while the evidence showed that in fact nothing but the names of the relevant characters were "adapted." Tr.Test. of Dian L. Castle.

■ The Court finds that, in light of the egregious nature of the Plaintiff's misconduct, any award of back pay for the period following the OCC's discovery of Ms. Castle's plagiarism of the book *The Coach* would be unfair and inequitable to the Defendant, and would overcompensate the Plaintiff. The goal of federal employment discrimination laws "is to restore the victim of the employer's illegal conduct to the position he or she would have occupied absent the discrimination." *Mardell,* 31 F.3d at 1240. In view of the jury verdict finding discrimination and awarding compensatory damages, as well as the credible evidence that Ms. Castle's misconduct would have independently led to termination, the Court's limitation of equitable relief to the date upon which the misconduct was discovered maintains that legislative goal while providing employers with the "incentive to shun practices of dubious legality." *Albemarle Paper Co.,* 422 U.S. at 417, 95 S.Ct. at 2371.

Moreover, a review of the trial exhibits reveals that the training materials authored by J.H. Harliss and by Jeffrey Nelson Associates, which Ms. Castle copied in her OJT aid for distribution within the agency, indicate that such materials may not be reproduced without the prior written permission of

the publisher. Exh. 59–60. There is no evidence that Ms. Castle obtained such permission prior to copying these materials. Although the Defendant did not submit evidence regarding whether this particular violation would have led to her termination, the Court observes that, notwithstanding her bibliography, this use of copyrighted material would, in light of her plagiarism of the book *The Coach,* further bolster the Defendant's decision to terminate her had this evidence been revealed during her tenure at the OCC.

Accordingly, the Court finds, in the exercise of its discretion to determine equitable relief, that the after-acquired evidence of the Plaintiff's plagiarism precludes front pay and reinstatement, and limits the Plaintiff's recovery of backpay to the date the OCC discovered the evidence. In particular, the Court finds that the Plaintiff may recover backpay only from the period of her termination on January 10, 1992 to the date upon which the OCC discovered the plagiarism, on September 30, 1992.

■ Finally, the Court finds, as counsel for both parties agreed at the November 7, 1994 hearing, that the pay received by the Plaintiff from the Texas Department of Mental Health and Retardation following her termination from the OCC must be offset against the Plaintiff's backpay recovery. Thus the Plaintiff may only recover backpay from the OCC for the period described above less all pay received from the Texas Department of Mental Health and Retardation from August 10, 1992, the date she began her employment there, until September 30, 1992, the date upon which the Court determines that the Defendant's liability for backpay ends.

The Court observes that, upon inquiry at the November 7, 1994 hearing, counsel for neither party could provide the Court with accurate figures with respect to Ms. Castle's salary at the OCC or at the Texas Department of Mental Health and Retardation. The Court assumes that such figures are readily available and undisputed. Accordingly, the Court shall direct the parties to meet and confer, in person, regarding the precise amounts of compensation Ms. Castle either received or would have received from the

relevant organizations during the relevant dates, and jointly file a pleading with the Court advising the Court as to the total sum of backpay the Plaintiff may recover pursuant to the findings of fact and conclusions of law set forth in this Memorandum Opinion.

### CONCLUSION

The Court determines that the Plaintiff may not recover any front pay, and shall not be reinstated to her position at the OCC as a result of the record in this case. The Court further finds, however, that the Plaintiff may recover backpay from the OCC for the period following her termination on January 10, 1992, up to and including September 30, 1992, the date upon which the OCC discovered the evidence of her plagiarism. The Court further finds that this sum must be offset by the amount the Plaintiff earned at the Texas Department of Mental Health and Retardation from August 10, 1992 up to and including September 30, 1992. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

### ORDER

Upon consideration of the submissions and oral arguments of counsel for both parties, the applicable law, the entire record in this case, and for the reasons articulated in the Court's Memorandum Opinion issued of even date herewith, the Court finds that the Plaintiff may recover backpay from the period following her termination on January 10, 1992 up to and including September 30, 1992. The Court further finds that this amount shall be offset by the amount the Plaintiff earned from August 10, 1992 up to and including September 30, 1992, at the Texas Department of Mental Health and Retardation.

In addition, as counsel for neither party was able to inform the Court at the November 7, 1994 hearing of the precise earnings of the Plaintiff at either organization, the Court shall direct the parties to meet and confer, in person, regarding the precise compensation the Plaintiff would have received from the Office of the Comptroller of the Currency

during the relevant dates had she not been discharged, and the amount the Plaintiff did receive from the Texas Department of Mental Health and Retardation during the relevant dates. The parties shall then jointly file a pleading indicating to the Court the exact amount of backpay which the Plaintiff may recover pursuant to the findings of fact and conclusions of law set forth in this Court's Memorandum Opinion issued of even date.

Accordingly, it is, by the Court, this 8th day of November, 1994,

ORDERED that the Plaintiff is not entitled to any front pay or to reinstatement; and it is

FURTHER ORDERED that the Plaintiff may recover backpay from the Defendant for the period following her termination on January 10, 1992, up to and including September 30, 1992; and it is

FURTHER ORDERED that this amount shall be offset by the amount of the Plaintiff's earnings at the Texas Department of Mental Health and Retardation from August 10, 1992, up to and including September 30, 1992; and it is

FURTHER ORDERED that the parties shall meet and confer, in person, regarding the precise compensation the Plaintiff would have received from the Office of the Comptroller of the Currency following her discharge on January 10, 1992 up to and including September 30, 1992, and the amount the Plaintiff did receive from the Texas Department of Mental Health and Retardation from August 10, 1992 up to and including September 30, 1992, and jointly file a pleading on or before 4:00 p.m. on November 15th, 1994, in which the parties shall advise the Court of the precise amount of backpay, offset by her earnings at the Texas Department of Mental Health and Retardation, which the Plaintiff may recover pursuant to the above-ordered paragraphs; and it is

FURTHER ORDERED that, in view of the foregoing and pursuant to Rule 58 of the Federal Rules of Civil Procedure, the Clerk shall enter judgment for the Plaintiff in the amount of $75,000 for compensatory damages effective November 4, 1994, and for backpay in accordance with the above-ordered paragraphs; and it is

FURTHER ORDERED that the above-captioned case shall be dismissed, without prejudice, to the right of counsel to submit on or before 4:00 p.m. on November 15, 1994, the above-mentioned pleading regarding backpay; and it is

FURTHER ORDERED that counsel for the Plaintiff shall have until 4:00 p.m. on November 18, 1994, in which to file a Petition for attorneys' fees and costs; and it is

FURTHER ORDERED that the Defendant shall have until 4:00 p.m. on November 18, 1994 in which to file any Opposition thereto; and it is

FURTHER ORDERED that counsel for the Plaintiff shall have until 4:00 p.m. on December 9, 1994, in which to file any Reply thereto; and it is

FURTHER ORDERED that the Defendant's Motion for Reconsideration, filed November 7, 1994, shall be, and hereby is, declared MOOT, as the Court need not reach the issues raised therein with respect to mitigation of damages, in light of its decision to limit backpay to September 30, 1992.