Dian L. CASTLE, Plaintiff,

v.

Lloyd M. BENTSEN, Secretary of
the Department of Treasury,
Defendant.

Civ. No. 93–2643 (CRR).

United States District Court,
District of Columbia.

Jan. 18, 1995.

Michael Kator and Tracy Hilmer of Kator, Scott, & Heller, Washington, DC, for plaintiff.

Madelyn E. Johnson, and Sherri L. Evans, Asst. U.S. Attys., along with Eric H. Holder, Jr., U.S. Atty., and John D. Bates, Asst. U.S. Atty., for defendant. Larry J. Stein, Sr. Trial Atty., Office of the Comptroller of the Currency, Washington, DC, of counsel.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court are the Defendant's Motion for Judgment Notwithstanding the Verdict ("JNOV")[1] and the Plaintiff's Motion to Amend Judgment, each filed following the return of a jury verdict for the Plaintiff on November 1, 1994, in the above-captioned case. Upon careful review of the pleadings, the relevant case law, the oral argument of counsel at the December 16, 1994 hearing on said motions, and the entire record herein, the Court shall deny both motions, as hereinafter set forth.

### BACKGROUND

The Plaintiff, Dian L. Castle, was employed with the Office of the Comptroller of the Currency ("OCC") from February 11, 1991 to January 10, 1992, on which date she was terminated during her probationary period. Tr.Exh. 19. On December 30, 1993, the Plaintiff filed a Complaint alleging, in pertinent part, intentional discrimination on the basis of her sex and retaliation under Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e et seq.,

---

1. The 1991 Amendments to the Federal Rules of Civil Procedure abandoned the familiar terminology of "directed verdict" and "JNOV" and denominated each motion a "motion for judgment as a matter of law," in view of the common identity between the preverdict and post-verdict motions. Because both parties employ the term "JNOV" in their briefs, however, the Court shall do the same in this Memorandum Opinion, although it makes note of the technical change to Rule 50 per the 1991 Amendments.

as well as handicapped discrimination under Section 501 of the Rehabilitation Act of 1973, *as amended,* 29 U.S.C. § 791 *et seq.* By Order entered November 2, 1994, at the close of the Plaintiff's case-in-chief, the Court granted the Defendant's Motion for Judgment of a Matter of Law on the Rehabilitation Act claim, but denied the motion with respect to the Title VII claim. A jury trial was held on the Plaintiff's claims of sex discrimination and retaliation. On November 4, 1994, the jury returned a verdict finding that the Plaintiff had proved, by a preponderance of the evidence, each element of her claim of sex discrimination, but found that the Plaintiff had not proved her retaliation claim. The jury awarded the Plaintiff $75,000 in compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

On November 4, 1994, counsel for both parties entered into an oral stipulation that any and all unresolved issues concerning backpay, front pay and reinstatement shall be committed to the sole and sound discretion of the Court, sitting without a jury, to be determined on the basis of the entire record. On November 7, 1994, a hearing was held on the issue of the Plaintiff's entitlement to such equitable relief. In a *Memorandum Opinion* entered November 8, 1994, the Court found that the Plaintiff was entitled to backpay until September 30, 1992, the date upon which the Defendant discovered evidence of the Plaintiff's plagiarism of the book entitled *The Coach* and other on-the-job-training materials, 867 F.Supp. 4. The Court further found, in the exercise of its equitable discre-

tion, that the Plaintiff was not entitled to front pay or reinstatement.[2] Pursuant to the Court's Order of even date, the parties filed a Stipulation on November 17, 1994 as to the precise amount of backpay the Plaintiff may recover pursuant to the Court's findings. It is this Memorandum Opinion and Order that the Plaintiff now challenges in her instant Motion to Amend Judgment.

## DISCUSSION

**I. UNDER THE SUPREME COURT'S DECISION IN *AIKENS,* AND UNDER THE STANDARDS GOVERNING MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT, THE COURT FINDS THAT THE DEFENDANT'S MOTION MUST BE DENIED.**

■ The Defendant moves for Judgment Notwithstanding the Verdict, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, on the grounds that the Plaintiff failed to produce sufficient evidence upon which a reasonable jury could find that she was discriminated against on account of her sex. More specifically, the Defendant argues that the Plaintiff failed to prove her prima facie case under *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), because she did not produce sufficient evidence in support of the fourth criterion set forth by the Supreme Court in that case, namely, that male employees were treated more favorably that she was.[3]

**2.** As set forth in the Court's Memorandum Opinion of November 8, 1994, courts have split over whether after-acquired evidence of misconduct may be used as a means of limiting, or eliminating altogether, an employer's liability for unlawful employment practices. Memorandum Opinion of Nov. 8, 1994, at 7 (citing, for example, *Mardell v. Harleysville Life Ins. Co.,* 31 F.3d 1221 (3rd Cir.1994) (after-acquired evidence may preclude front pay and reinstatement and limit backpay); *Wallace v. Dunn Const. Co.,* 968 F.2d 1174 (11th Cir.1992), *reh'g en banc granted and opinion vacated,* 32 F.3d 1489 (11th Cir.1994) (same); *Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700 (10th Cir.1988) (after-acquired evidence of falsifications by employee precluded any relief in Title VII case); *Welch v. Liberty Machine Works, Inc.,* 23 F.3d 1403 (8th Cir.1994) (same); *McKennon v. Nashville Banner Publish-*

*ing Co.,* 9 F.3d 539 (6th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994) (same); *Washington v. Lake County, Ill.,* 969 F.2d 250 (7th Cir.1992) (same)). This Court adopted the former approach which precludes front pay and reinstatement but limits recovery of backpay up until the date of discovery of the evidence, so long as the discovery was independent of the litigation. As compared to the view taken by the *Summers* court and others, this approach, the Court might add, favors plaintiffs like Ms. Castle.

**3.** Counsel for the Defendant acknowledges that they failed to renew their motion for a directed verdict at the close of all the evidence and that, under such circumstances, a party is generally held to have waived the right to seek JNOV.

In response, the Plaintiff cites controlling Supreme Court precedent to which the Defendant offers no substantive challenge. In *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), the Supreme Court held that once a case proceeds beyond summary disposition and the defendant proffers an alleged non-discriminatory reason for its actions against the plaintiff, "the *McDonnell–Burdine* presumption 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" *Aikens*, 460 U.S. at 715, 103 S.Ct. at 1481–82 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 255, 101 S.Ct. 1089, 1095 n. 10, 1095, 67 L.Ed.2d 207 (1981)). The Court explained,

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to determine whether "the defendant intentionally discriminated against the plaintiff."

*Id.* (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093).

■ In the instant case, the Court denied the Defendant's Motion for Judgment as a Matter of Law at the close of the Plaintiff's case-in-chief, and the Defendant proffered substantial evidence of legitimate nondiscriminatory reasons for the Plaintiff's termination. Under *Aikens*, a challenge to the Plaintiff's prima facie case at this late date is inappropriate and provides no basis to upset the jury's verdict.[4]

■ In his Reply, the Defendant further argues that "[e]vidence concerning sex discrimination and the reasonable inferences to be drawn therefrom simply do not support a finding that an unlawful motive was present in the defendant agency's termination of the plaintiff." Reply, at 3–4. This broader, but undeveloped, challenge to the sufficiency of the Plaintiff's evidence at trial, one which appears to go directly to the question of discrimination vel non, must also fail.

■ It is well-settled that a JNOV motion may be granted only if "the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable [people] could not disagree on the verdict." *Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1232 (D.C.Cir.1984) (citations omitted). The Court observes that the Defendant's production of substantial evidence of the Plaintiff's poor work performance and lack of interpersonal and communication skills in the face of virtually no direct evidence of sex discrimination against the Plaintiff herself renders this a very close case under this standard. *See* Testimony of Judith Walter; Gary Norton; Donald G. Coonley; and Thomas M. Fitzgerald.

Motion for Judgment Notwithstanding the Verdict, at 2 n. 1 (citing *Myers v. Norfolk Livestock Market, Inc.*, 696 F.2d 555, 558 (8th Cir.1982)). They argue, however, that many modern courts have excused noncompliance with this rule. *See, e.g., Trujillo v. Goodman*, 825 F.2d 1453, 1455–56 (10th Cir.1987). In response, Plaintiff's counsel cites to the "overwhelming majority" of federal courts which have followed the traditional rule, but notes that they have been unable to find a case on point in this Circuit. Opposition, at 2. While the Court is inclined to agree with the Plaintiff that the Defendant failed under Rule 50(b) to preserve his motion, it shall nevertheless address the merits of the same to afford the parties a full and thorough resolution of all outstanding issues.

4. The *Aikens* Court noted that "at one point in the trial the District Court decided that Aikens had made out a prima facie case" because the Defendant moved to dismiss on that very ground.

*Aikens*, 460 U.S. at 714 n. 4, 103 S.Ct. at 1481 n. 4. In contrast, in the instant case, as the Plaintiff points out in her brief, the Defendant moved for judgment as a matter of law at the close of the Plaintiff's case-in-chief on the ground that the evidence proffered by the Plaintiff did not permit an inference of discrimination. Opposition, at 3. As counsel must know, however, the *McDonnell–Burdine* factors, when established, permit an inference of discrimination. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. Thus, defense counsel's oral motion challenging whether the Plaintiff had proffered sufficient evidence to support an inference of discrimination necessarily encompassed the prima facie case. Accordingly, the Court finds no merit to the Plaintiff's alternative argument that because the Defendant failed to mount a specific challenge to the sufficiency of the Plaintiff's evidence on the fourth prong of the prima facie case, he cannot raise that challenge now. Opposition, at 3.

■ Nevertheless, in ruling on a JNOV motion, the Court must take care not to substitute its judgment for that of the jury, or weigh the credibility of the witnesses. *Anderson v. Group Hospitalization, Inc.,* 820 F.2d 465, 472 (D.C.Cir.1987). At trial, the Plaintiff presented evidence that her former boss, Paul Barsnica, made demeaning comments about women generally, including a joke to a group of people which the Plaintiff found offensive. Testimony of Dian L. Castle. *See also* Testimony of Anita Colbart; Marilyn Durban. Plaintiff's counsel argues that "[t]he jury was entitled to view these comments as sexist slurs." Opposition, at 7. The Court must agree. Accordingly, viewing the evidence " 'in the light most favorable to the plaintiff[ ], [and] giving [her] the advantage of every fair and reasonable inference that the evidence may justify,' the Court finds that the jury verdict must stand." *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.1983) (quoting *Foster v. Maryland State Savings and Loan Ass'n,* 590 F.2d 928, 930 (1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979)).

## II. BECAUSE THE COURT HAS DISCRETION UNDER THE STATUTE TO GRANT SUCH EQUITABLE RELIEF AS IT DEEMS APPROPRIATE, AND IN VIEW OF BOTH PARTIES' STIPULATION THAT THE COURT, SITTING WITHOUT A JURY, MAY DECIDE THE ISSUES OF BACKPAY, FRONT PAY AND REINSTATEMENT ON THE BASIS OF THE ENTIRE RECORD, THE PLAINTIFF'S MOTION TO AMEND JUDGMENT SHALL BE DENIED.

■ Pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure, the Plaintiff moves for an amendment of the Court's judgment entered November 11, 1994 to require the OCC to reinstate her and to pay her full back pay for the period from her termination through the date of her reinstatement. As grounds therefor, the Plaintiff resurrects a novel argument raised orally by counsel in the midst of the trial and rejected by the Court, to wit, that the Court lacked jurisdiction to decide the after-ac-

quired evidence defense in this case because the Civil Service Reform Act of 1978, Pub.L. 95–454, § 1 et seq., 92 Stat. 1111 (codified, as amended, in various sections of 5 U.S.C.) (the "CSRA"), vests in the Merit Systems Protection Board ("MSPB") exclusive authority to decide issues regarding the appropriateness of adverse personnel actions taken against federal employees. Thus, the Plaintiff argues, the Court's judgment on the after-acquired evidence defense "runs afoul of the Constitution and the CSRA." Motion to Amend Judgment, at 3.

The Plaintiff further contends that the Court's Memorandum Opinion of November 8, 1994 failed to account for critical evidence that allegedly undermines the after-acquired evidence defense, and that it improperly ignored the jury's factual findings. Finally, the Plaintiff asserts that the Court incorrectly applied the preponderance of the evidence standard of proof to its inquiry, while the clear and convincing standard should govern.

As a preliminary matter, the Court reminds counsel once again of their joint stipulation at the end of the trial to the effect that the Court, sitting without a jury, could decide the after-acquired evidence defense on the basis of the entire record. The Court notes that it inquired about said stipulation expressly to avoid the latter allegations at bar, namely, that the Court had no authority to make findings of fact on that issue and therefore improperly usurped the factfinding province of the jury in doing so.

■ In view of the stipulation, Plaintiff's counsel cannot now be heard to have preserved any objection to the Court's exercise of its equitable discretion in carefully and conscientiously deciding the factual issues surrounding the after-acquired evidence defense based on the entire record. Moreover, at the hearing on the Motion to Amend Judgment, Plaintiff's counsel acknowledged that they had stipulated to the same, but asserted that the stipulation did not apply to the question of jurisdiction. Accordingly, the Court shall address the legal jurisdictional issue in the first instance, but observes that the Plaintiff's litany of allegations as to the propriety of the Court's exercise of its discre-

tion to determine backpay based on the entire record are wholly inappropriate and without merit.[5]

Moreover, it is essential to recall the Court's exact charge to the jury in its final jury instructions:

> As to the issue of credibility or believability of the Plaintiff, the Defendant has been permitted to put on evidence that the Plaintiff made false statements on her employment application with the OCC, and that the Plaintiff plagiarized her work from a book entitled *Coach,* in violation of copyright laws. You may consider this evidence in determining whether or not the Plaintiff, Dian L. Castle, is credible or believable.[6]

From the above it is clear that the after-acquired evidence in this case was limited to the issue of the Plaintiff's believability and credibility—nothing more, nothing less. For the Plaintiff to suggest in a post-verdict motion that the Court ultimately instructed the jury that the after-acquired evidence could be used to limit damages is, as the Defendant observes, disingenuous at best. Opposition, at 4.

Furthermore, the Plaintiff's assertion that the "jury plainly signalled its rejection of the after-acquired evidence defense" is wholly without merit, as the jury's verdict included no finding whatsoever as to this issue. Motion to Amend Judgment, at 4–5. In turn, the jury's verdict rejecting the Plaintiff's retaliation claim and awarding damages for intentional discrimination cannot be read to have "compelled" the Court to reinstate the Plaintiff with full backpay, as the Plaintiff now urges. Motion to Amend Judgment, at 5. To so find would be to ignore the plain language of the statute which vests in the Court the discretion to grant "any . . . equitable relief as the Court deems appropriate." 42 U.S.C. § 2000e–5(g). The Court's discretion to go beyond the verdict form alone in fashioning equitable relief is particularly vivid in light of the Plaintiff's stipulation that the Court could determine such issues on the basis of the *entire* record.

The language of the statute also provides the short answer to the Plaintiff's argument that the Court lacked jurisdiction to consider the after-acquired evidence defense in fashioning equitable relief in this case. Congress has expressly stated that the Court may "order such affirmative action as may be appropriate, which *may* include, but is not limited to, reinstatement or hiring of employees, *with or without* backpay . . . ." *Id.* (emphasis added).

■ At bottom, the Plaintiff now argues that federal courts lack any discretion whatsoever to fashion equitable relief in cases involving federal employees who, at the time the after-acquired evidence was discovered, would have finished their probationary period and attained the right to appeal any adverse employment decision to the MSPB. Under such circumstances, the Plaintiff suggests, a court's only option is to award reinstatement with full backpay. At oral argument, Plaintiff's counsel further observed that the Defendant agency could then pursue any equitable relief by terminating the Plaintiff again based on the after-acquired evidence, and later making their case for termination on the Plaintiff's administrative appeal before the MSPB. Neither the language of the statute nor the case law thereunder, however, place any such severe restriction on the Court's discretion to determine equitable relief under Title VII.

■ Aside from the statute itself, the Supreme Court has made clear that the statutory scheme implicitly recognizes that there may be cases calling for one remedy but not another, and that such discretionary choices

---

5. The Court therefore shall not address the Plaintiff's challenges to its findings of fact except to state that the evidence cited in its Memorandum Opinion of November 8, 1994 and the record as a whole fully support the Court's conclusion that the Plaintiff plagiarized the book *The Coach,* and that any award of backpay should be limited to the date of the OCC's discovery of her misconduct, in view of the evidence indicating that such discovery would have led to her termination at that time.

6. Final Jury Instructions, at 15–16 (filed November 4, 1994). The jury had a copy of these instructions during its deliberations. The Court included no further instruction that the jury could use the after-acquired evidence to limit damages.

are left to the Court's judgment guided by sound legal principles. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415–16, 95 S.Ct. 2362, 2370–71, 45 L.Ed.2d 280 (1975) ("back-pay is not an automatic or mandatory remedy; like all other remedies under the Act, it is one the courts 'may' invoke" in the exercise of their sound "discretion [which] is equitable in nature"); *Ford Motor Co. v. EEOC*, 458 U.S. 219, 226–27, 102 S.Ct. 3057, 3062–63, 73 L.Ed.2d 721 (1982). *See also Cancellier v. Federated Dep't Stores*, 672 F.2d 1312, 1319 (9th Cir.1982) (the determination of whether reinstatement of a particular plaintiff is appropriate lies solely within the discretion of the trial court); *Brito v. Zia Co.*, 478 F.2d 1200, 1204 (10th Cir.1973) (same). Accordingly, a district court considering whether to grant equitable relief "is not confined to the facts determinative of the discharge issue. The court may rely on all of the evidence adduced at trial and may draw all reasonable inferences therefrom." *EEOC v. General Lines, Inc.*, 865 F.2d 1555, 1562 (10th Cir. 1989). Moreover, the Court's findings as to equitable relief are reviewable on appeal under the clearly erroneous standard. Fed. R.Civ.P. 52(a). *See also General Lines, Inc.*, 865 F.2d at 1558 (" '[A]pplication of equitable doctrines rests in the sound discretion of the district court; absent a showing of abuse of discretion, the district court's exercise thereof will not be disturbed on appeal.' ") (quoting *McKinney v. Gannett Co., Inc.*, 817 F.2d 659, 670 (10th Cir.1987)). At the time of the stipulation, the parties had no quarrel with these principles, and the Plaintiff makes no new or credible argument in her instant motion to suggest that the Court improperly performed its lawful function.

Rather, the Plaintiff supports her challenge to the Court's jurisdiction by citing to *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1987), a case addressing the jurisdiction of a federal court to hear an appeal from an adverse action arising under the Civil Service Reform Act. *Fausto*, however, is inapposite, as it did not arise under Title VII and does not purport to deal with the discretion of a district court to fashion equitable relief for a Title VII plaintiff.[7] Indeed, those issues are squarely addressed by Title VII itself and the case law interpreting its remedial provisions.

The Plaintiff further asserts that the Court ignored "the only reported" MSPB case involving discipline for plagiarism, and argues that "as a matter of law, discharge for plagiarism alone would be an impermissibly harsh and excessive penalty." Motion to Amend Judgment, at 3–4 (citing *Tri v. Securities and Exchange Commission*, 24 M.S.P.R. 90 (1984)).

In its Memorandum Opinion, however, the Court made its findings of fact and conclusions of law based on the entire record in *this* case, and cannot and need not speculate as to how the MSPB *might* have viewed a dismissal for plagiarism under the circumstances presented here. The case law under Title VII makes clear that the Court was free to rely on all the evidence adduced at trial to determine the issue of equitable relief, so long as the Court exercised this power " 'in light of the large objectives of the Act.' " *Albemarle Paper Co.*, 422 U.S. at

---

7. *Fausto* addressed the question of whether non-preference eligible employees—who are, under the CSRA, afforded no administrative or judicial review of adverse personnel action in the form of suspension for misconduct—may nevertheless seek judicial review of their former employer's action under the Tucker Act, 28 U.S.C. § 1491, based on the Back Pay Act, 5 U.S.C. § 5596. The Court reviewed the nature and structure of the CSRA, and found that "[i]ts deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act." *Fausto*, 484 U.S. at 455, 108 S.Ct. at 677.

Thus, *Fausto* addressed the particular question of how a particular provision of the CSRA having to do with a particular category of federal employees squared with the conflicting provisions of another statute, the Back Pay Act. Accordingly, the Plaintiff's broad statement that the Supreme Court in *Fausto* "clearly held" that "a Federal employee's *exclusive* remedy for a disciplinary action is an appeal to and hearing before the MSPB," so as to curtail a district court's exercise of discretion to fashion equitable relief in a Title VII case involving an after-acquired evidence defense, is imprecise at best. Plaintiff's Motion to Amend Judgment, at 3 (emphasis in original). In any event, *Fausto* surely does not dictate the result the Plaintiff urges here.

416, 95 S.Ct. at 2371 (citing *Hecht Co. v. Bowles,* 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1994)). While the "'make whole' purpose of Title VII is evident by the legislative history," it unquestionably does not compel the award of reinstatement and backpay in every case, and the Supreme Court has recognized that "the trial court will often have the keener appreciation of those facts and circumstances peculiar to particular cases." *Id.* at 419, 420–21, 95 S.Ct. at 2372, 2372–73. Any after-acquired evidence is one factor the Court may or may not consider in tailoring equitable relief in accordance with the purposes of Title VII and in light of the particular facts and circumstances of a given case. Accordingly, the Court finds that the congressional grant of discretion to award whatever equitable relief the Court may deem appropriate necessitates the conclusion that the Court is not *compelled* by any MSPB decision or anything else to exercise its discretion toward a single outcome.

Finally, the Plaintiff argues that the Court improperly applied the preponderance of the evidence standard to its after-acquired evidence analysis. As the Defendant correctly points out, however, the Plaintiff conceded that this was the correct standard of proof prior to trial and did not raise a timely objection. Opposition, at 7 (citing Plaintiff's Proposed Jury Instructions). Accordingly, the Plaintiff waived the right to make any such argument later. *See* Fed.R.Civ.P. 51. Moreover, as the Court advised counsel at the hearing, the Court's findings of fact and conclusions of law would have been identical under a clear and convincing standard, in light of the evidence proffered at trial. Finally, the Court observes that the Plaintiff provides no authority—aside from the Brief for Amici Curiae United States and Equal Employment Commission in *McKennon v. Nashville Banner Publishing Co.,* U.S. No. 93–1543 (filed July, 1994)—for the claim that the clear and convincing standard prevails. Surely the Plaintiff cannot be suggesting that the Court is bound by the legal statements made in the Government's amici brief filed in an unrelated case. In any event, the Court need not make any ruling as to the proper standard, as the evidence in the instant case meets either standard, and as the Supreme Court will likely settle the matter in its pending decision in *McKennon.*

### CONCLUSION

The Court finds that, under the Supreme Court's unanimous decision in *Aikens,* and viewing the evidence in the light most favorable to the Plaintiff, the Defendant's Motion for Judgment Notwithstanding the Verdict shall be denied. In addition, in view of the parties' stipulation that the Court, sitting without a jury, could decide the issues of reinstatement, front pay and backpay on the basis of the entire record, and in view of the discretion afforded the Court to fashion equitable relief under Title VII and the relevant case law, the Plaintiff's Motion to Amend Judgment shall be denied.